[Civ. No. 22616. Second Dist., Div. Three. May 20, 1958.]

WILLIAM E. MUIR et al., Appellants, v. NORMAN COTTON GRIER et al., Respondents.

Morris Lavine and Hanifin & Hanifin for Appellants.

Moss, Lyon & Dunn, Gerold C. Dunn and Henry F. Walker, for Respondents.

PATROSSO, J. pro tem.*—Action for wrongful death. The plaintiffs are the surviving husband and minor child of Thelma Olive Muir. In a trial before a jury a verdict was rendered in favor of the defendants and plaintiffs appeal from the ensuing judgment.

Stated in the light most favorable to the respondents, the facts are these: The death of the decedent resulted from injuries sustained as a result of a collision between an automobile driven by the deceased and one driven by the defendant Norman C. Grier. The accident occurred at about 9:30 a. m., on June 16, 1955, at the intersection of Clybourn and Valerio Streets in the city of Los Angeles. Clybourn is a paved highway 61 feet wide, running north and south. Valerio is a dirt street 30 feet wide running east and west but does not extend easterly beyond Clybourn, thus forming what is commonly known as a "T" intersection. The day was clear and dry. At the northwest corner of the intersection there is a residence surrounded by shrubbery and some large trees. As a consequence, from a point 100 feet north of Valerio on Clybourn, visibility is limited to 66 feet west on Valerio and from a point 100 feet west on Valerio, visibility is limited to 60 feet north on Clybourn.

Immediately prior to the accident, defendant was driving south on Clybourn about 12 or 15 feet from its west side at about 35-37 miles per hour in a 1954 Lincoln automobile equipped with power brakes in good operating condition. The decedent was driving east on Valerio in a Willys station wagon. Defendant first observed decedent's automobile when he was about 100 feet north of the intersection. At that time the Willys was about 60 feet west of the intersection, 8 or 9 feet from the north curb of Valerio and traveling at about

*Assigned by Chairman of Judicial Council.

10 to 15 miles per hour. Upon observing the deceased, the defendant applied his brakes and traveled a short distance before he felt the wheels lock and the car commence to skid, leaving 75 feet of overall locked skid marks upon the surface of the roadway before striking the deceased's vehicle at a point 10 feet south of the northerly part of Valerio and 10 feet east from the westerly line of Clybourn.

As previously stated, decedent was on the north or left side of Valerio when observed by the defendant, and immediately before the accident she was ''cutting'' the corner in making a left turn into Clybourn. She brought her vehicle to a stop in front of defendant's skidding car when her automobile was near the north intersection line with its bumper about 10-20 feet out into the intersection. Defendant undertook to turn his car to the right but was successful in doing so only to a very limited extent due to the fact that his wheels were locked. The right front of defendant's vehicle struck the door on the driver's side of the Willys, causing it to move for a distance estimated by the defendant of from 2 to 5 feet and to roll over on its right side.

Appellants first contend that the judgment is unsupported by the evidence. We do not agree. The question of defendant's negligence aside, from the foregoing recital of evidence, it is apparent that the jury was warranted in concluding that the deceased was guilty of negligence in failing to observe the approach of defendant's automobile before entering the intersection and in undertaking to make a left-hand turn in violation of Vehicle Code, section 540, subdivision (b), and that such negligence upon her part was a proximate cause of the accident. In addition to the facts hereinabove stated, it appears that the deceased lived on Valerio Street a few blocks west of the intersection and that she frequently drove over to and upon Clybourn and was familiar with traffic conditions thereon. The evidence is to the effect that the average speed at which southbound vehicles traveled on Clybourn was about 55 miles per hour, a fact which the jury, under the circumstances, was warranted in concluding was known to her and in the light of which the reasonableness of her conduct was to be judged.

Appellants next contend that the court erred in giving instructions upon contributory negligence. This contention is in effect disposed of by what has just been said above. However, in advancing this contention, appellants make the additional claim that the testimony of the defendant that

the deceased was "cutting" the corner must be disregarded because it was given during the course of his examination under section 2055 of the Code of Civil Procedure. Their argument is that by reason of this fact the defendant's statement "was not affirmative evidence of the facts," and that the presumption of due care to which the deceased was entitled, as the court instructed the jury, was not thereby dispelled. The contention is without merit. While it is true, as appellants assert, that a plaintiff is not bound by the testimony elicited from a defendant under section 2055, it is nonetheless "substantive evidence in the case for all purposes to which it was relevant" (*Dorn* v. *Pichinino* (1951), 105 Cal.App.2d 796, 800 [234 P.2d 307]), and whether this and other testimony was sufficient to overcome the presumption of due care was a fact question for the jury. (*Siegell* v. *York* (1948), 84 Cal.App.2d 383, 389 [191 P.2d 50].) Moreover, evidence adduced by the appellants themselves as to the point of impact serves to corroborate defendant's testimony that the deceased was in fact "cutting" the corner as he testified.

█ Appellants further contend that the court erred in not giving an instruction to the effect that the burden of proof upon the issue of contributory negligence was upon the defendants. While it is true that the court did not give an instruction which in so many words stated that the burden of establishing contributory negligence was upon the defendants, the court gave a number of instructions upon this subject, the correctness of which is not challenged. Thus at the request of both parties, the court gave BAJI instruction Number 21, defining the terms "burden of proof" and "preponderance of the evidence," that the party asserting the affirmative of the issue must carry the burden of proving it; that if the conflicting evidence is evenly balanced so that the jury is unable to find that the evidence on either side of the issue preponderates, then the finding must be against the party carrying the burden of proof, namely: The one who asserts the affirmative of the issue. The jury, at the request of the appellants were also instructed "that if you should find that it is just as probable that Thelma Muir was free from negligence, or, even if negligent, that (her) negligence did not contribute as a proximate cause of her death, as it is that negligence on her part did contribute as a proximate cause, then the defense of contributory negligence has not been established." In addition, the jury at the request of the appellants, was instructed as follows: "The law pre-

sumes that Thelma Muir (now deceased), in (her) conduct at the time of and immediately preceding the accident here in question, was exercising ordinary care and was obeying the law.

"These presumptions are a form of prima facie evidence and will support findings in accordance therewith, in the absence of evidence to the contrary. (When there is other evidence that conflicts with such a presumption, it is the jury's duty to weigh that evidence against the presumption (and any evidence that may support the presumption), to determine which, if either, preponderates. Such deliberations, of course, shall be related to, and in accordance with, my instructions on the burden of proof.)"

In the light of the foregoing, it may not be said that the jury were not informed that the burden of establishing contributory negligence rested upon the defendant. If the plaintiffs desired a further or more specific instruction upon the subject it was incumbent upon them to request the same, and absent such request they may not be heard to complain. (*Wyatt* v. *Pacific Elec. Ry. Co.* (1909), 156 Cal. 170, 176 [103 P. 892].)

Appellants likewise complain that the trial court erred in not giving an instruction upon the doctrine of the last clear chance. However, if it were to be conceded that an instruction upon this subject might properly have been given, no such instruction was requested by the appellants and they may not now be heard to complain. (*Newman* v. *Los Angeles Transit Lines* (1953), 120 Cal.App.2d 685, 698-699 [262 P.2d 95]; *Scandalis* v. *Jenny* (1933), 132 Cal.App. 307, 313 [22 P.2d 545].)

Finally the appellants assert that the court erred in various particulars in its rulings upon the admission and exclusion of evidence. The first of these relates to the refusal of the court to admit in evidence three photographs of the body of the deceased in the automobile immediately following the accident. Their argument is that these pictures were graphic views of the "exact details of the accident, its force and effect and as impeaching of the defendant's testimony as to the speed which he was traveling and as to the skid marks." It is difficult to understand how such a claim may be made for these photographs. Each of the facts which plaintiffs claim that they portray is more graphically and clearly disclosed by the many other photographs which were admitted in evidence, a number of them having been taken by the

police officers immediately following the accident. These disclosed in detail the damage to both vehicles, their position in the roadway, the skidmarks of defendant's car, outlined with chalk marks, and the area immediately surrounding the intersection. On the contrary, the pictures which were excluded show nothing except the position of the decedent's body in the automobile after it had been righted. The only legitimate purpose of the photographs would be to prove the fact of death and that it had resulted from the accident, but these facts were admitted and stipulated to. Their introduction into evidence could have served no purpose unless possibly to prejudice the jury in favor of the appellants, and the trial court, in the exercise of a sound discretion, properly refused to admit the same. (*People* v. *Burns* (1952), 109 Cal.App.2d 524, 541, 542 [241 P.2d 308, 242 P.2d 9] ; *Ryan* v. *United Parcel Service,* (C.C.A.2d) 205 F.2d 362, 364.)

 Appellants also complain of the trial court's refusal in permitting appellants to introduce into evidence what they referred to as plaintiffs' Exhibit 5 for identification. A reading of appellants' brief, however, discloses that they have reference to plaintiffs' Exhibit 6, which was admitted in evidence when offered after foundational proof by the party who had prepared it. This exhibit is what appellants refer to as an onion skin drawing, which, as the evidence discloses, was prepared by a Mr. Bramble more than a year after the accident from a photograph which he had taken at that late date purporting to show a "black spot" on the surface of the roadway in the intersection where the accident occurred. Mr. Bramble was the surveyor who prepared the diagram of the intersection which was introduced in evidence upon the trial as plaintiffs' Exhibit 1. The ruling of which appellants complain in this connection apparently has reference to the following incident: Prior to the time that Mr. Bramble testified and identified the diagram in question, and during the direct examination of plaintiffs' witness Mr. Petersen, who was one of the investigating police officers, counsel for appellants asked him the following question: "I will show you what purports to be an . . . onion skin drawing of a section of a street that is labeled 'Clybourn and Valerio,' and it also has the directions, north, east, west and south, and it indicates for those directions, and it also has a black spot and some kind of a drawing in the center of it. I would like to ask you if you will take a look at that and tell us if you believe that that, placed on top of the drawing of Plaintiffs'

Exhibit 1, would indicate some relationship to where the oil was left on the pavement there in that intersection on the 16th day of June, 1955.'' An objection to the question was sustained and counsel for the appellants pursued the matter no further. It does not appear that Officer Petersen had even seen the drawing before and as he had neither prepared it nor exhibit 1, the question was clearly improper and the objection thereto properly sustained. Singularly enough, when Mr. Bramble was called as a witness by plaintiffs no similar question was propounded to him. Moreover, if, as appellants suggest, the purpose of the question addressed to Officer Petersen was for the purpose of locating the portion of the roadway where oil had been spilled as a result of the collision, the question, if otherwise proper, was merely cumulative, as this witness, who arrived at the scene immediately following the accident, described in detail the location and extent of the fresh oil which he found upon the roadway at that time.

Appellants next complain of the refusal of the trial court to permit them to show that at the coroner's inquest the defendant, after having been advised by the deputy coroner of his constitutional right to refuse to give any testimony if he felt that it might tend to incriminate him, and being asked if he wished to testify, answered in the negative. Whatever doubts may have existed as to the propriety of this ruling at the time it was made, have been effectively dispelled by the recent decision of our Supreme Court in *People* v. *Snyder* (April 10, 1958), 50 Cal.2d 190, 195-198 [324 P.2d 1], wherein it is held that such proof is inadmissible, and expressly disapproving the decisions in this state to the contrary upon which appellants rely. In this connection appellants advance a rather obscure argument to the effect that after having announced his intention of availing himself of his privilege of not testifying, the defendant waived the privilege by answering in the affirmative the single question put to him by the coroner: ''Were you a party to this accident?'' If, as appellants contend, this constituted a waiver of the privilege, how then can they argue that they were deprived of the right to adduce proof upon the trial of this action that the defendant had claimed his privilege at the coroner's inquest? The argument appears to us to be self-destructive.

Appellants further complain of the ruling of the trial court in sustaining objections to questions propounded as to the reaction time it takes a driver to apply his brakes after realizing that he should do so. In answer to a previous ques-

tion designed to qualify the witness as an expert, he testified that he "could state what the minimum reaction time is that I have encountered, but I couldn't say that that was the minimum for anyone." Thereafter the following question was propounded to the witness: "Well, let me ask you this. Do you have any way of computing, for example, that if there was three-fourths of a second required from the time that a person actually decided that he was going to stop up until the time that he got his foot on the brake and the car began to slow down as a result of the braking, based upon 35 miles an hour, could you tell us how far the car would travel?" To this question, an objection that it assumed facts not in evidence, was sustained. Thereafter the following question was propounded to the witness: "Is there any figure such as three-fourths of a second, or any similar figure that is commonly used as the basis for a person for reaction time from the time that they first see an object until such time as they can get their foot on the brake to stop the car?" To this question, objection upon the ground of immateriality, was likewise sustained. Although the ground of the objection to the latter question may have been insufficient, the rulings were correct in view of the witness's previous testimony that he was unable to state what the minimum reaction time for anyone was. (4 Cal.Jur.2d p. 392, § 538.) The situation here is similar to that presented in *Jobe* v. *Harold Livestock Com. Co.* (1952), 113 Cal.App.2d 269, 273 [247 P.2d 951], where this court said: "He (the witness) did testify, however, that he could not express any opinion as to defendant's 'reaction time,' without making tests. This was sufficient to have excluded the opinions of the witness which assumed a theoretical time within which defendant would have applied his brakes." In any event, we cannot see wherein the appellants could have been prejudiced by these rulings in view of the evidence that defendant's vehicle laid down 75 feet of skidmarks to the point of impact and his testimony that he traveled approximately 25 feet before he felt his car begin to skid.

Finally, appellants complain of the trial court's ruling in admitting testimony to the effect that the average speed at which southbound vehicles traveled on Clybourn was 55 miles per hour. As previously noted, the deceased lived on Valerio Street, a few blocks west of the intersection and she frequently drove over to and upon Clybourn, which would warrant an inference that she was familiar with the traffic conditions on Clybourn and the speed at which vehicles cus-

680

tomarily traveled thereon.' This evidence was admitted by the court for the limited purposes, as the jury were expressly instructed, of informing the jury as to "the facts and circumstances existing at the time and place of the accident and which were known to the parties to it so as to permit the jury to pass upon the question: whether or not Thelma Muir [the deceased] conducted herself as an ordinary and reasonable person would have conducted herself in the light of all the circumstances." For the limited purposes stated, the evidence was admissible and the trial court's ruling was correct. (*Cucinella* v. *Weston Biscuit Co.* (1954), 42 Cal.2d 71, 73-74 [265 P.2d 513].)

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 16, 1958.