[Civ. No. 24100. Second Dist., Div. Three. June 29, 1960.]

DEAN STAFFORD, Appellant, v. DONNA ALEXANDER
et al., Respondents.

Richard M. Hawkins and Ernest F. Shelander. for Appellant.

Dryden, Harrington, Horgan & Swartz and Vernon G. Foster for Respondents.

FORD, J.—The plaintiff brought this action to recover for personal injuries sustained by him when his motorcycle collided with an automobile driven by the defendant Donna Lee Alexander. Because of his condition after the accident, it was necessary that the action be prosecuted on his behalf by his wife as his guardian *ad litem*. The jury returned a verdict for the defendants in the first trial but the motion of the plaintiff for a new trial was granted. On the retrial, the verdict of the jury was again for the defendants. The motion for a new trial thereafter made by the plaintiff was denied. He appeals from the judgment.

The accident occurred on March 15, 1956, at about 5 :15 p. m. at the intersection of Rodeo Road and Wellington Avenue in Los Angeles. The plaintiff was riding his motorcycle in an easterly direction on Rodeo Road. His motorcycle collided with an automobile being driven by the defendant Donna Lee Alexander. Mrs. Alexander had been driving in a southerly direction on Wellington Avenue and was crossing Rodeo Road which was a through street, there being boulevard stop signs on Wellington Road to control traffic about to enter or cross Rodeo Road.

At the time of the accident, the occupation of the plaintiff was that of a motorcycle officer for Culver City. As a result of the accident he suffered injury to his brain. In March of 1958 and before the second trial of the case, he was committed to the Camarillo State Hospital.

The defendant Donna Lee Alexander was called as a witness

by the plaintiff pursuant to the provisions of section 2055 of the Code of Civil Procedure. She testified that the streets were dry, the weather was clear and the visibility good. As she approached the intersection, she brought her automobile to a stop a few inches behind the curb line. This was at the edge of the intersection and past the stop sign. She looked to her left in an easterly direction and then to her right. She could see several blocks in each direction. To the east she saw automobiles "a block and a half to two blocks away." That traffic "appeared to be just starting up" slowly. To her right, she saw "[t]raffic about a block and a half to two blocks away." It consisted of more than two cars. That eastbound traffic was occupying two lanes and also appeared to be "just starting up." Having made such observation, she immediately started into the intersection. She saw the plaintiff's motorcycle just a moment—"just about one second"—before the accident. It was then about 18 feet away and was in the parking lane on Rodeo Road. As she was crossing the intersection prior to the accident, she saw the cars approaching from the west just out of the corner of her eye, but she could not state where they were. She admitted that at the prior trial she had testified that, after she had started into the intersection and up to the time she first saw the motorcycle, she did not again see any of the traffic on Rodeo Road which she had mentioned. From the time she started into the intersection until the time of the impact, the highest speed which she attained was between 10 and 15 miles per hour. At the time of her deposition, her answer had been "[n]ot more than ten miles" per hour. Her speed was fairly constant during the time that she crossed the intersection. At the time of the impact, half of her automobile was past the intersection. She felt the impact. At that time, "[j]ust for a split second" she was "kind of out of control" of her automobile and then she applied the brakes, she believed. She stopped within approximately 2 or 3 feet of the impact, she believed.

Officer Charles W. Kuhlman arrived at the scene shortly after the accident and before the plaintiff was removed in an ambulance. The Alexander automobile was then about 25 to 30 feet south of the intersection.

Officer William L. Smith testified that he arrived at the scene at about 5:35 p. m. and made an investigation. His measurements of the streets established that Rodeo Road was 56 feet in width and Wellington Road 34 feet in width. The point of impact was on Rodeo Road, 9 feet north of the south

curb of Rodeo Road and 9 feet east of the west curb of Welling-
ton Road. When he arrived at the scene of the accident, the
Alexander automobile was on Wellington Road south of Rodeo
Road. He found a skid mark left by the right rear wheel of
the automobile which started 23 feet south of the point of
impact. The skid mark was 30 feet long, ending at the right
rear wheel. The right rear wheel was 44 feet south of the
south curb of Rodeo Road and the left side of the automobile
was approximately in line with the center point of the roadway
on Wellington Road. The right rear wheel was just about in
line with the point of impact. The right rear portion of the
automobile was struck by the front of the motorcycle. There
was a dent to the rear of the right rear wheel. No skid marks
were laid down by the motorcycle. There was no physical
evidence that the plaintiff turned or attempted to swerve in
any manner.

Elmer George Flingstrom testified that he was driving an
automobile in a westerly direction on Rodeo Road in the lane
of traffic next to the double line. When he first saw the Alex-
ander automobile, it was not quite across the double line. At
that time the witness was about 40 or 45 feet back from the
intersection. Another automobile was 8 feet in front of the
witness. There was eastbound traffic about the same distance
—40 or 45 feet—from the intersection as was the witness at
the time. He saw a "bunch of cars" coming from the west.
But he had noticed a white helmet "a considerable distance
back." He watched it all the way to the accident. The wearer
of the white helmet was on the curb line on the side of two cars.
When the witness was 40 feet from the intersection, the auto-
mobiles and the man in the helmet were about the same dis-
tance on the other side of the intersection. The two cars and
the motorcycle were going about "25, 30 miles" per hour. The
motorcycle and the automobile eventually came together and
the two cars alongside the motorcycle "just kept going" as
far as the witness could see. When the impact took place, the
witness' car was entering the intersection. He did not see the
motorcycle itself, but only the white helmet, until the col-
lision. All he could see was the "white helmet traveling along
with the cars." The plaintiff was in the curb line and was to
the right rear of the most southerly of the two eastbound cars.

The first contention of the appellant relates to the
sufficiency of the evidence to sustain the verdict. On his be-
half, it is argued that the testimony of the defendant Donna
Lee Alexander in and of itself showed negligence on her part

"in that she failed to keep a proper lookout or was negligently inattentive in not seeing plaintiff and further in pulling out in front of approaching traffic on a through highway in violation of law." It is also argued that the "presumption of due care together with the physical facts and direct and circumstantial evidence produced by the witnesses and incorporated in . . . [the] transcript herein would seem to preclude, as a matter of law, a finding of contributory negligence."

In passing upon such a contention, this court is governed by the rule, so often repeated, which is succinctly stated in *Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, at page 429 [45 P.2d 183] : "In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court."

What was said in *Grasso* v. *Cunial*, 106 Cal.App.2d 294 [235 P.2d 32], finds pertinent application in this case. At pages 300-301, the court stated: "Section 552[1] does 'not set a hard and fast rule for the conduct of drivers approaching through highways.' Whether a driver acts with due care or negligently in proceeding across a through highway is a jury question (*Wilkinson* v. *Marcellus*, 51 Cal.App.2d 630, 633 [125 P.2d 584]). In *Hershey* v. *Laswell*, 63 Cal.App.2d 219, 222 [146 P.2d 509], the court said: 'The trial court adopted defendants' theory that plaintiffs' car was not close enough to constitute an immediate hazard and that implied finding is conclusive on appeal under such circumstances. (*Dickinson* v. *Pacific Greyhound Lines*, 55 Cal.App.2d 824 [131 P.2d 401].)'

---

[1]At the time of the accident herein, March 15, 1956, section 552 of the Vehicle Code was as follows: "(a) The driver of any vehicle shall stop as required by Section 577 of this code at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard. (b) Said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicle so about to enter or cross the through highway."

That language fits the instant case. In *Glynn* v. *Vaccari,* 64 Cal.App.2d 718, 721 [149 P.2d 409], the court says: 'As stated in *Casselman* v. *Hartford A. & I. Co.,* 36 Cal.App.2d 700, 708 [98 P.2d 539], "This appellant, in common with many users of the highways, seems to have the impression that every motorist who attempts to enter a main highway from a side road, does so at his peril. This misconception of the law is a prolific source of accidents. As we have shown, such motorist has very definite rights granted to him by the provisions of the Vehicle Code, and those users of the main highway who ignore such rights must be prepared to pay the penalty." ' The 'very definite rights' are given the motorists by subdivision (b) of section 552 which provides that after the driver has 'yielded' by stopping at an arterial sign he 'may proceed *and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way* to the vehicle so about to enter or cross the through highway.' (Italics added.) Respondent's conduct must be viewed, of course, in relation to appellant's conduct. As said in *Angelo* v. *Esau,* 34 Cal.App.2d 130, 137 [93 P.2d 205], 'The circumstance that a driver is using a through highway . . . does not absolve him from making ordinary use of his faculties.' A driver on a through highway like any other motorist must maintain a proper lookout and keep his car under control (*Marshall* v. *Klatt,* 19 Cal.App.2d 110, 112-113 [64 P.2d 1105]; *Stup* v. *Higgins,* 41 Cal.App.2d 379 [106 P.2d 931]) and whether or not he does so is a question for the jury (*Roller* v. *Daleys, Inc.,* 219 Cal. 542 [28 P.2d 345]; *Morehead* v. *Roehm,* 118 Cal.App. 312 [4 P.2d 995]). The discussion of this phase of the case can be brought to a conclusion by the citation of the leading case of *Couchman* v. *Snelling,* 111 Cal.App. 192, 195-196 [295 P. 845], where the court said: 'Where a car has actually entered an intersection before the other approaches it, the driver of the first car has the right to assume that he will be given the right of way and be permitted to pass through the intersection without danger of collision. He has a right to assume that the driver of the other car will obey the law, slow down, and yield the right of way, if slowing down be necessary to prevent a collision. (*Keyes* v. *Hawley,* 100 Cal.App. 53, 60 [279 P. 674].) Nor is a plaintiff required to yield the right of way to one a considerable distance away whose duty it is to slow down in crossing an intersection. (*Whitelaw* v. *McGilliard,* 179 Cal. 349 [176 P. 679].)' "

 In *Malinson* v. *Black,* 83 Cal.App.2d 375, it was said

at pages 377-378 [188 P.2d 788]: "The statute does not require a driver approaching an arterial highway to refrain from crossing until the highway is free from all traffic. It places on him the duty of determining, in the exercise of ordinary care, when a crossing would not 'constitute an immediate hazard.'

"Respondent testified that he came to a complete stop at the boulevard stop sign, surveyed the highway, saw that no cars were approaching from the right, and that the nearest car, presumably appellant's, approaching from the left, was at a distance of approximately 80 yards north of the intersection. Having concluded that he had plenty of time to safely cross the intersection, he proceeded in, looking straight ahead. Respondent may have been mistaken in his judgment of the distance of appellant's car from him. Or he may have incorrectly estimated the time it would take him to drive his own car from a standing stop past the center line of the highway. Whether such a mistake of judgment constituted negligence was a question of fact. . . . Appellant stresses the admission that respondent did not look again toward appellant's car after he had stopped and observed its distance from him. But we cannot declare such conduct to be negligence as a matter of law. 'Where a driver sees an approaching car, whether he acted as a reasonable man in not keeping his eye on that car, is generally a question of fact for the trier of fact.' (*Breland* v. *Traylor Eng. etc. Co.,* 52 Cal.App.2d 415, 422, 423 [126 P.2d 455]; *Lundgren* v. *Converse,* 34 Cal.App.2d 445 [93 P.2d 819]; *Lee* v. *Stephens,* 8 Cal.App.2d 650 [47 P.2d 1105].)

"The evidence on the issue of respondent's negligence herein, being subject to conflicting inferences, it cannot be said that he entered the intersection in violation of section 552 of the Vehicle Code, for whether or not appellant's car constituted an immediate hazard to a reasonably prudent person at that moment was clearly a question of fact. That the accident occurred is not proof that respondent violated section 552. He had almost cleared the center of the highway when his car was struck on the left side toward the rear. The trial judge here presumably concluded that respondent was lawfully crossing the arterial, and that it was appellant's failure to yield the right of way that proximately caused the accident."

With respect to the argument based upon the skid mark behind the right rear wheel of the automobile, as stated

by Mr. Justice Peters in *Butticci* v. *Schindel Furniture Co.*, 152 Cal.App.2d 165, at page 168 [313 P.2d 62] : "Evidence of skid marks is, of course, admissible on the issue of speed (*Linde* v. *Emmick*, 16 Cal.App.2d 676 [61 P.2d 338]), but it is not such 'conclusive' or 'unanswerable' evidence that it necessarily overcomes contrary oral testimony. (*Douglass* v. *Crabtree*, 57 Cal.App.2d 568 [134 P.2d 912] ; *Roselle* v. *Beach*, 51 Cal. App.2d 579 [125 P.2d 77] ; *Doyle* v. *Loyd*, 45 Cal.App.2d 493 [114 P.2d 398] ; *Finley* v. *Steiner*, 40 Cal.App.2d 331 [104 P.2d 819] ; *Coughman* v. *Harman*, 135 Cal.App. 49 [26 P.2d 851].)"

The verdict finds sufficient support in the evidence and we are not at liberty to disturb it unless reversible error appears with respect to other matters which will be discussed hereinafter.

The appellant contends that there was error in that the trial court refused to honor the stipulation of the parties that the police report could be read into evidence. But the only incident in the record which appears to relate to such contention occurred while counsel for the defendants was cross-examining Officer Smith. He had asked the officer whether his police report contained the name of a witness known as Eileen Doner and the officer answered that it did. The officer further testified that he had recorded in the police report her version of the accident. The attorney for the defendants thereafter made the "request that counsel for the plaintiff honor the previous written stipulation." After discussion of counsel, the court stated, "I would rule that the stipulation doesn't permit the police report to be in evidence." It is to be noted that there was no offer of the police report by counsel for the appellant and, therefore, there was no adverse ruling of which the appellant may complain. Moreover, the stipulation to which counsel were making reference appears to be the stipulation with respect to the deposition of Eileen Doner Sluszewer which was to be taken in the city of Tel Aviv, State of Israel. That deposition was apparently filed on December 16, 1958, whereas the jury had returned its verdict on October 27, 1958. The stipulation is set out in the footnote.[2] It is clear therefrom that, in any event, the stipulation

---

[2]"It Is Hereby Stipulated by and between the parties that the witness Eileen Donner [sic] Sluszewer told the investigating officers that at the time of the accident she was approximately eighty (80) feet east of the point of impact and that she further stated to them the following: I was walking W/B on the So. sidewalk of Rodeo Rd when I noticed

did not embody that portion of the police report to which the argument of the appellant in his brief is addressed.[3] No error appears with respect to this matter.

The appellant asserts that the trial court erred in failing to strike certain testimony which consisted of a conclusion of the defendant Donna Lee Alexander. To evaluate this contention, it is necessary to consider all of the particular incident which occurred when the witness testified that, as she was crossing Rodeo Road, she saw eastbound cars just out of the corner of her eye. The testimony was then as follows: "Q. Where were those cars when you saw them? A. I am not sure. I don't remember where they were. Q. Well, were they a block away? A. I just know they were a safe distance away. MR. DONKIN: I will ask that question be stricken, your Honor, as not responsive to the question. THE COURT: Can you answer? Were they a block away or not? If you can't, don't try to. THE WITNESS: I couldn't answer where they were. MR. DONKIN: Q. You don't know where they were? A. No. Q. You know there were cars? A. Yes. Q. Would they be closer than a block? A. I just don't remember. I honestly can't say." Aside from the apparent waiver of the motion to strike by the failure of counsel to press for a determination thereof (see *D'Avanzo* v. *Manno,* 16 Cal.App.2d 346, 348 [60 P.2d 524]), it is clear that the subsequent questions and answers eliminated any substantial basis for a claim of prejudicial error.

that car veh 1 which was coming S/B on Wellington Rd at slow rate of speed, it veh 1 was (front of veh 1) right near the S curb of Rodeo Rd when I saw the Motor cycle Veh 2 just a few feet or so West of the I/S coming E/B on Rodeo Rd near the S curb of Rodeo Rd. The Motor cycle veh 2 also appeared to be coming at a slow rate of speed and I thought they would miss each other. However the motor cycle veh 2 struck the right side of veh 1 causing the man P-2 to be thrown into the street. I don't know whether the car veh 1 had stopped for the Blvd stop sign or not. When I first saw Veh's 1 & 2. I am quite sure there were two E/B veh's stopped in the El lane. WLS. It is further stipulated that at the time of trial plaintiff may read said stipulation into evidence. It is further stipulated that a copy of this stipulation will be attached to plaintiff's cross-interrogatories addressed to said witness and that said stipulation will be shown to the witness prior to her answering any of the written interrogatories in order to refresh her recollection concerning the facts of the accident involved."

[3]On page 10 of the opening brief, reference is made to portions of the police report as follows: "'Page two of the police report which is attached hereto and marked Appellant's Exhibit B indicates respondent driver's violation of appellant's right of way. Witness number 2 on the police report Stephen Iino stated to the police officers at the scene of the accident that he was quite sure respondent driver did not make a complete stop.''

The appellant argues that during the testimony of the defendant Donna Lee Alexander, while she was under examination by her own counsel, the trial judge made a comment which seemed to convey to the jury "his opinion and the fact that he felt she traveled for some distance at a constant speed prior to the impact." But consideration of the incident shows that the trial judge was merely attempting by a question to clarify the testimony of the witness rather than undertaking to comment thereon or to express an opinion with respect thereto. The incident was as follows (the portion upon which the appellant bases his argument being in italics) : "Q. So that the simple computation is you started from zero and may have been going as fast as 15 miles an hour by the time the accident occurred? A. Yes. Q. What I am trying to get at, you didn't start at 15 miles an hour and remain at that speed until the time of the accident? A. Yes. MR. DONKIN: Just a moment. If your Honor please I am going to object to that testimony. There was no testimony that she was doing 15 miles per hour. The testimony now at this time is she was going between ten and fifteen miles per hour, somewhere in between. The deposition, I think that said ten miles. THE COURT: Well, that is true. The only point is, which I think was obvious to the jury even before these last questions, when you started at zero, why, for a while you were going less than that. MR. DONKIN: I think that is exactly right but I do object to getting her up to fifteen on direct examination. THE COURT: *In other words, you started from zero miles an hour and got up to somewhere between ten and fifteen or maybe as low as ten and then maintained that speed all the rest of the way?* THE WITNESS: Yes." Moreover, it is to be noted that counsel for the appellant at the trial apparently did not consider the matter to be of a prejudicial nature since he raised no objection and made no request for an admonition to the jury.[4] (See *People* v. *Murray,* 172 Cal.App.2d 219, 234 [342 P.2d 485].)

A number of questions are raised by the appellant with respect to the jury instructions. The first claim of error is with reference to the instruction on the subject of the bur-

[4]In the course of the instructions to the jury, the BAJI instruction Number 5 as requested by all parties was given as follows: "I have not intended by anything I have said or done or by any questions that I may have asked to intimate or suggest what you should find to be the facts, or that I believe or disbelieve any witness who may have testified, and if anything that I have done or said has seemed to so indicate, you will disregard that intimation and form your own opinion without regard thereto." (Cal. Jury Instns., Civ. (4th rev. ed. 1956), No. 5.)

den of proof which was given by use of BAJI instruction Number 21 (Revised) (Cal. Jury Instns., Civ. (4th rev. ed. 1956) Number 21 (Revised)) with the deletion of some words and the addition of certain words.[5] While it is stated on the face of the instruction that it was requested by both the plaintiff and the defendants, it is a fair inference based upon the usual practice with respect to the use of BAJI instructions that the added words were those of the trial judge. Instructions should, of course, be clearly and simply stated. The added language hardly meets this standard. It would have been better to have expressly stated that the plaintiff had the burden of proving by a preponderance of the evidence that the defendant Donna Lee Alexander was negligent and that such negligence was a proximate cause of injury to the plaintiff. Again, it would have been more helpful to the jury to have expressly stated that the defendants had the burden of proving by a preponderance of the evidence that the plaintiff was negligent and that such negligence contributed as a proximate cause of the injury.[6] But it would be unreasonable to assume that the jurors were unaware of the fact that the plaintiff claimed that the defendant Donna Lee Alexander had been negligent and that the defendants contended that the plaintiff had been guilty of contributory negligence.[7] In the instruc-

---

[5]The instruction (except for the last paragraph which is not involved in the question raised), with the added words in italics, is as follows: ''In civil actions, the party who asserts the affirmative of an issue must prove that issue by a preponderance of the evidence.

''By a preponderance of the evidence is meant such evidence as, when weighed with that opposed to it, has more convincing force, and from which it results that the greater probability of truth lies therein. In the event that the evidence is evenly balanced so that you are unable to say that the evidence on either side of an issue preponderates, that is, has the greater convincing force, then your finding upon that issue must be against the party who had the burden of proving it. In this action, the plaintiff has the burden of proving the following issues: *all the affirmative allegations of the complaint* and the defendant has the burden of proving these issues: *any allegations of contributory negligence in the answer.*''

[6]The court, at the request of the plaintiff, gave the definition of proximate cause as contained in BAJI Instruction Number 104 (except for the last sentence which is bracketed). At the request of all parties, the court gave BAJI Instruction Number 104-A which was in part as follows: ''To give rise to liability, however, or to constitute contributory negligence, any such proximate cause must have consisted of negligent conduct.'' (Cal. Jury Instns., Civ. (4th rev. ed. 1956), Nos. 104 and 104-A.) See also footnote 7 to this opinion.

[7]Aside from other matters which would make the jurors aware of the claims of the respective parties, BAJI instruction Number 113 was given at the request of the defendants. That instruction clearly informed the jurors that, with respect to liability, the issues to be determined were whether the defendant Donna Lee Alexander was negligent and, if so, whether that negligence was a proximate cause of any injury to the plain-

tion under discussion, the jury was told that "the party who asserts the affirmative of an issue must prove that issue by a preponderance of the evidence." (*Cf. Whitford* v. *Pacific Gas & Elec. Co.*, 136 Cal.App.2d 697, 702 [298 P.2d 278] ; *Muir* v. *Grier*, 160 Cal.App.2d 671, 675 [325 P.2d 664].) In *Sinclair* v. *Pioneer Truck Co.*, 51 Cal.App. 174, it was stated at pages 176-177 [196 P. 281] : "The court refused to give defendants' proposed instructions 1 and 22, advising the jury as to where the burden lay as to each of the issues, enumerating them. Instead of adopting the language proposed the court instructed the jury generally to the effect that the duty was imposed upon the plaintiff to prove the allegations of his complaint by a preponderance of the evidence, and that any matter of defense pleaded by the defendants could be established only by a preponderance of the evidence. It appears that the jury was familiar with the only really controverted issues in the case, namely, the negligence of the defendants and the contributory negligence of the plaintiff, so that the instructions given by the court on this subject were, we have no doubt, sufficient." In *Shields* v. *Oxnard Harbor Dist.*, 46 Cal.App.2d 477 [116 P.2d 121], it was contended that there had been error in instructing the jury as follows : " (g) 'In view of the fact that contributory negligence as alleged in this case by the defendant, Alexander McDougall, is an affirmative plea, the burden of proof under the evidence of the whole case is on the defendant, Alexander McDougall, to prove that the plaintiff, Warren Jenkins, was guilty of contributory negligence as alleged in his answer, and that the same proximately caused the injuries to him, and unless you so find from all the evidence of the case, you will find in favor of the plaintiff, Warren Jenkins, on that issue.' " With respect to a criticism of that instruction which was similar to the appellant's criticism of the language, "all the affirmative allegations of the complaint," in the present case, Mr. Justice McComb said, at page 491 : "The instruction set forth in paragraph (g) of defendants' sixth proposition when read in connection with other instructions on contribu-

---

tiff, and, if the jury found in the affirmative on such issues, whether the plaintiff was negligent, and, if so, whether that negligence contributed as a proximate cause of the injury of which the plaintiff complained.

In that instruction, the jurors were also told that if they found contributory negligence, the verdict must be for the defendant, but that if they found that there was no contributory negligence and "you previously have found that negligence on defendant's part was a proximate cause of plaintiff's injury, you then must fix the amount of plaintiff's damages and return a verdict in his favor." (Cal. Jury Instns., Civ. (4th rev. ed. 1956), No. 113.)

tory negligence given to the jury was not susceptible to the interpretation that it required defendants to prove all of the acts of contributory negligence alleged in their answer.'' Accordingly, no prejudicial error has been shown with respect to the particular instruction.

The court instructed the jury, at the request of the plaintiff, that if it found that the plaintiff was unable to testify concerning the facts leading up to the happening of the accident in question, the law presumed that he, in his conduct at the time of and immediately preceding the accident, was exercising ordinary care and was obeying the law. He contends, however, that there was error in instructing the jury in the language of the last paragraph of BAJI instruction Number 22 (Revised).[8] His argument is that it ''is hopelessly confusing in a case of this nature as it confuses burden of proof with the presumption of due care in plaintiff's favor.'' While it may be difficult for jurors to fully grasp the meaning of the language, it is a correct statement of the law. (See *Reynolds* v. *Roll*, 122 Cal.App.2d 826, 838 [266 P.2d 222].) Moreover, the appellant is in no position to question the instruction since it was requested by him as well as by the defendants. (*Carlson* v. *Glanville, supra,* 170 Cal.App.2d 246, 249 [338 P.2d 580].)

The appellant urges that it was error to give BAJI instruction Number 25[9] which was requested by the defendant. The argument is that, ''due to plaintiff's inability to testify on his own behalf, it appears that this instruction is prejudicial and unduly favorable to defendant's case.'' There was no error. (Code Civ. Proc., § 1844.) Such an instruction

---

[8] ''If the burden of proof of the issue to which a presumption relates rests on the party in whose favor the presumption arises, then it is not necessary for the other party to overcome the presumption by a preponderance of the evidence. In that case, the presumption together with any other evidence supporting it must have more convincing force than the contrary evidence in order to justify a finding in accordance therewith. If the party in whose favor the presumption arises does not have the burden of proof of the issue to which it relates, then it is necessary for the other party to overcome the presumption by a preponderance of contrary evidence.'' (Cal. Jury Instns., Civ. (4th rev. ed. 1956), No. 22 (Revised).)

[9] The instruction was: ''The testimony of one witness worthy of belief is sufficient for the proof of any fact and would justify a finding in accordance with such testimony, even if a number of witnesses have testified to the contrary, if from the whole case, considering the credibility of witnesses and after weighing the various factors of evidence, you should believe that there is a balance of probability pointing to the accuracy and honesty of the one witness.'' While this instruction is not in the exact language of the latest BAJI instruction Number 25, there is no substantial difference in meaning. (See Cal. Jury Instns., Civ. (4th rev. ed. 1956), No. 25.)

avoids the possibility of the application of an erroneous notion that some juror may have obtained from one source or another that the testimony of a single witness to a fact is not sufficient to prove such fact. (See 7 Wigmore on Evidence, 3d ed., §§ 2032-2034.)

The appellant also questions the propriety of BAJI instruction Number 26[10] as applied to this case. He argues that it ''is apparent that the presumption of due care which applies to the plaintiff in this case is another factor that will overcome the presumption'' that a witness speaks the truth. There was no error. A presumption is evidence under the law of this state. (*Smellie* v. *Southern Pacific Co.*, 212 Cal. 540, 549 [299 P. 529] ; *Larsen* v. *Atchison, T. & S. F. Ry.*, 176 Cal. App.2d 21, 25 [1 Cal.Rptr. 36].) The jury was so informed in the instruction which stated the presumption of due care with respect to the conduct of the plaintiff.[11] Such presumption of due care, therefore, constituted evidence to be weighed against the testimony of the defendant Donna Lee Alexander by the trier of fact in determining her credibility. The challenged instruction did not detract from the effect of such presumption.

An attack is made upon the instruction which defined contributory negligence in the language of BAJI instruction Number 103.1 (Revised).[12] The criticism is addressed to the use of the words ''some degree.'' Such criticism

[10]That instruction as given was as follows: ''In judging the credibility of witnesses, you shall have in mind the law that a witness is presumed to speak the truth. This presumption, however, may be overcome by contradictory evidence, by the manner in which the witness testifies, by the character of his testimony, or by evidence that pertains to his motives.'' (See Cal. Jury Instns., Civ. (4th rev. ed. 1956), No. 26.)

[11]That instruction was: ''If you find that Plaintiff DEAN STAFFORD, is unable to testify concerning the facts leading up to the happening of the accident in question, the law presumes that he, in his conduct at the time of and immediately preceding the accident, was exercising ordinary care and was obeying the law.

''These presumptions are a form of prima facie evidence and will support findings in accordance therewith, in the absence of evidence to the contrary. When there is other evidence that conflicts with such a presumption, it is the jury's duty to weigh that evidence against the presumption and any evidence that may support the presumption, to determine which, if either, preponderates. Such deliberations, of course, shall be related to and be in accordance with my instructions on the burden of proof.''

[12]That instruction was in part as follows: ''Contributory negligence is negligence . . . which negligence, concurring with the negligence of another, contributes in some degree in proximately causing the damage of which the claimant thereafter complains.'' (Cal. Jury Instns., Civ. (4th rev. ed. 1956), No. 103.1 (Revised).)

is without merit. (*Hickenbottom* v. *Jeppesen,* 144 Cal.App. 2d 115, 122 [300 P.2d 689]; *Odian* v. *Habernicht,* 133 Cal. App.2d 201, 205 [283 P.2d 756]; *Kettman* v. *Levine,* 115 Cal. App.2d 844, 851 [253 P.2d 102].)

The plaintiffs and the defendants requested BAJI instruction Number 116-A,[13] but it was not given. We have already held herein that while the jury should have been more carefully instructed upon the subject of the burden of proof with respect to the issues of negligence, contributory negligence and proximate cause, no reversible error has been shown. With respect to the phase of the matter now being discussed, the reasoning of the Supreme Court in *Hildebrand* v. *Los Angeles Junction Ry. Co.,* 53 Cal.2d 826 [3 Cal.Rptr. 313, 350 P.2d 65], is pertinent. It was there said, at page 831: "An instruction requested by plaintiff that defendant had the burden of proving contributory negligence was refused. Defendant argues that it was not error to refuse the requested instruction since the court informed the jury at defendant's request that the party who asserts the affirmative of an issue must carry the burden of proving it. Instructions should be clear and simply stated in order to avoid misleading the jury, and the general instruction that the party who asserts the affirmative of an issue must carry the burden of proving it may not have made it clear that the burden was on defendant to establish that plaintiff was negligent. The giving of the general instruction did not justify the refusal of the specific instruction requested by plaintiff. [Citations.]" But, as also stated in the Hildebrand case, at page 832: "No precise formula can be drawn for deciding whether errors in instructions have resulted in a miscarriage of justice. For this purpose we must review the entire record, including the evidence, and determine whether the errors require a reversal of the judgment. (Cal. Const., art. VI, § 4½; *Bridgman* v. *Safeway Stores, Inc.,* 53 Cal.2d 443, 450 [2 Cal.Rptr. 146, 348 P.2d 696].)" Our examination of the entire record in the present case has resulted in the conclusion that the deficiencies with

---

[13]That instruction, using the language applicable to this case, is in part as follows: "The burden is upon the plaintiff to prove by a preponderance of evidence that a defendant was negligent and that such negligence was a proximate cause of injury to the plaintiff. . . . To establish the defense of contributory negligence, the burden is upon the defendant to prove by a preponderance of evidence that the plaintiff was negligent and that such negligence contributed as a proximate cause of the injury." (See Cal. Jury Instns., Civ. (4th rev. ed. 1956), No. 116-A.)

respect to the matter of jury instructions have not resulted in a miscarriage of justice.

The final matter to be noted relates to the hearing of the motion for a new trial. The judge who presided at the trial was from another county and was absent from the county of Los Angeles at the time set for such hearing. Consequently, pursuant to section 661 of the Code of Civil Procedure, the motion was heard and determined by another judge.[14] The appellant contends that he had ''a legal and constitutional *right* to the independent judgment of the trial judge as to whether such judgment is supported by the evidence.'' The importance, in the proper administration of justice, of having the judge who presided at the trial pass upon such motion cannot be overemphasized. As stated in *Francis* v. *Superior Court,* 3 Cal.2d 19, at pages 28-29 [43 P.2d 300] : ''For it needs no argument, we think, to prove that a judge who has heard the evidence, examined the witnesses, and made a study of the law applicable to the facts in a case is best qualified to rule upon the weight and value of the testimony of such witnesses, as well as upon other questions presented by the motion and which were involved in the trial of the action and to which the trial judge in most instances has given his attention and studious consideration.'' But where the trial judge is absent from the county, the provisions of section 661 of the Code of Civil Procedure govern the matter. (*Frazure* v. *Fitzpatrick,* 21 Cal.2d 851, 861 [136 P.2d 566] ; *Mendoza* v. *Enrico,* 121 Cal.App.2d 392, 395 [263 P.2d 70].)

The appellant asserts that the judge who heard the motion for a new trial ''did not see or hear the facts and the evidence and did not read the transcript or have the reporter's notes read and was not apprised of all the facts and evidence.'' The record does not disclose that the appellant made available to that judge any reporter's transcript of the proceedings at the trial. (*Cf. Kuhlken* v. *Mangini,* 207 Cal. 44 [276 P. 577].) Nor does the record indicate that the appellant had recourse to that portion of section 660 of the Code of Civil Procedure which is as follows: ''[W]hen the proceedings at the trial have been phonographically reported, but the reporter's notes have not been transcribed, the reporter must upon request

---

[14]Section 661 of the Code of Civil Procedure provides in part: ''The motion for a new trial shall be heard and determined by the judge who presided at the trial; provided, however, that in case of the inability of such judge or if at the time noticed for hearing thereon he is absent from the county where the trial was had, the same shall be heard and determined by any other judge of the same court.''

of the court or either party, attend the hearing of the motion and shall read his notes, or such parts thereof as the court, or either party, may require." A similar situation was present in *Row* v. *Biehl*, 133 Cal.App. 263 [24 P.2d 186]. Therein the court said at page 267 : "It does affirmatively appear from the record that neither the court nor the appellants requested the reporter to attend the hearing of the motion or to read his notes or any part thereof. In view of this provision of the code it must be held that a party who does not make such request waives the right to object to the proceedings on the grounds that no written transcript of the evidence was presented at the time of making the motion for new trial, whether or not the parties admit and concede all the evidence that was produced at the trial of the case." While the problem presented by appellant with respect to a determination of the motion by a judge other than the trial judge under circumstances such as those in this case may well call for legislative consideration, this court is bound by the law as it now exists.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 24, 1960.