UNITED STATES, Appellee

v

LEON JOHNSON, JR., Private, U. S. Army, Appellant

18 USCMA 241, 39 CMR 241

No. 21,600

April 4, 1969

*Captain Monte Engler* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Major David J. Passamaneck.*

*Captain Warren W. Kaufman* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick* and *Major Edwin P. Wasinger.*

## Opinion of the Court

DARDEN, Judge:

A general court-martial in Frankfurt, Germany, convicted this appellant of assaulting Specialist Four Harrison Morrison with a dangerous weapon, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928. The court then imposed a sentence of confinement at hard labor for one year and forfeiture of $75.00 per month for the same period. The convening authority approved both the findings and the sentence. However, a board of review subsequently reduced the aggravated assault to the lesser included offense of assault and battery and, at the same time, modified the sentence to confinement at hard labor for six months and forfeiture of $64.00 per month for the same period. Our further understanding is that accused has served his confinement and has returned to duty, the unexecuted portion of his sentence pertaining to forfeitures having been ordered remitted by the Secretary of the Army on July 30, 1968. This case comes before us on petition with the single issue of:

Whether the accused was prejudiced by the law officer's refusal to permit the defense to impeach the

**241**

victim's credibility by showing his refusal to testify at the pretrial investigation conducted pursuant to Article 32, Uniform Code of Military Justice?

Factually, it is sufficient to note that prosecution evidence shows the assault to have taken place in the main dining room of the Enlisted Men's Club in Giessen, Germany. The accused approached from behind Morrison, who was then sitting at one of the tables, and hit him in back of the ear with some type of club. The defense evidence, in turn, indicates contrarily that Johnson's act was done in self-defense. Indeed, he had, before trial, charged Morrison with assaulting him with a knife and of carrying a concealed weapon.

Morrison, at trial, testified to the circumstances of his own injuries. On cross-examination, trial defense counsel attempted to impeach this witness by inquiring of Morrison why he had invoked his Article 31 rights during the Article 32 investigation. The law officer, however, enjoined this exploration of the reasons behind Morrison's Article 32 silence on constitutional and statutory grounds. He would not permit the court to draw inferences from this pretrial silence.

Appellate defense counsel cite cases from both the Supreme Court and this Court for the proposition that where an accused takes the stand, prejudicial error results from a showing that he had earlier relied on Article 31 or on the constitutional privilege to remain silent. Error is derived from the inference of guilt that may be drawn from such showing. According to the defense, however, there is no valid reason to extend the rationale of those cases to encompass the testimony of any other witness—especially the victim of an alleged assault. An accused should be able to impeach the credibility of a witness and the showing of an inconsistency is a proper means to this end. Appellate defense counsel further contend that Morrison's pretrial silence can be interpreted that he was trying to hide something, as, for example,

that he, rather than the accused, was the aggressor. Further, they suggest that if Morrison now testified with a grant of immunity, an immunity premised upon improper conditions, this raises the possibility that Morrison was not a competent witness at the trial. Appellate counsel believe that defense should have the right to test this possibility. They also assert that if Morrison's previous silence was not based on fear of self-incrimination, his refusal to testify at the Article 32 investigation appears improper. This, in turn, suggests to the defense that Morrison's trial statements were of recent fabrication.

An additional argument is that the court is under no obligation to protect a witness, especially one who has waived any invocation of his rights by taking the stand. The law officer's actions, according to the defense, denied the appellant a proper presentation of his case. The least that the law officer could have done was to have made a further inquiry into this proposed line of questioning.

Appellate Government counsel, in reply, assert that the basic issue in this case is whether the law officer abused his discretion in restricting Morrison's cross-examination. The answer, say counsel, depends upon whether there is an inconsistency between the pretrial silence of Morrison and his later trial testimony. They argue that the rationale of Grunewald v United States, 353 US 391, 1 L Ed 2d 931, 77 S Ct 963 (1957), applies to any witness, not only the accused, and that a majority of other courts so hold. These cases, in essence, maintain that there is nothing inconsistent between a witness's in-court testimony and his earlier choice of silence; that refusal to testify is as compatible with truth and innocence as with guilt; that evidence of the type in question is not a proper foundation for impeachment; and that no inference can be drawn from exercising the right to maintain silence. Appellate Government counsel declare there is no basis in either law or logic for the assumption that an innocent man who exer-

cises his constitutional privilege, abuses it.

It is the rule in this Court, a long fixed rule indeed, that pretrial reliance of an accused upon ▮ his Article 31 rights is inadmissible in evidence against him. United States v Kavula, 16 USCMA 468, 37 CMR 88. See also United States v Jones, 16 USCMA 22, 36 CMR 178; United States v Andrews, 16 USCMA 20, 36 CMR 176; United States v Russell, 15 USCMA 76, 35 CMR 48; United States v Bayes, 11 USCMA 767, 29 CMR 583; United States v Armstrong, 4 USCMA 248, 15 CMR 248.

This same restrictive practice is in force regarding the cross-examination of an accused who testified in his own behalf. United States v Stegar, 16 USCMA 569, 37 CMR 189; and United States v Brooks, 12 USCMA 423, 31 CMR 9. United States v Tackett, 16 USCMA 226, 36 CMR 382, places the rule in a proper perspective. The Court there said:

". . . Appellate Government counsel candidly concede it was error to show 'that an accused relied upon his rights' in refusing to make a statement. See United States v Jones, 16 USCMA 22, 36 CMR 178; United States v Andrews, 16 USCMA 20, 36 CMR 176; United States v Workman, 15 USCMA 228, 35 CMR 200; and authorities therein cited." [Id., at page 233.]

The predicate for the action in those cases is to be found in corresponding Supreme Court decisions, the first of which we note is Raffel v United States, 271 US 494, 70 L Ed 1054, 46 S Ct 566 (1926).[1] In that case, the

court held a defendant may waive his immunity from giving testimony by offering himself as a witness; that upon taking the stand in his own behalf, he does so as any other witness, and may be cross-examined to the facts in issue—within limits of appropriate rules; that he may be examined for impeachment purposes; and that his failure to deny or explain evidence of incriminating circumstances of which he is aware may be the basis of an adverse inference, on which the jury may be instructed.

The opinion in Johnson v United States, 318 US 189, 196, 87 L Ed 704, 63 S Ct 549 (1943), states:

". . . But where the claim of privilege is asserted and unqualifiedly granted, the requirements of fair trial may preclude any comment. That certainly is true where the claim of privilege could not properly be denied. The rule which obtains when the accused fails to take the stand (Wilson v United States, 149 US 60, 37 L Ed 650, 13 S Ct 765) is then applicable. As stated by the Supreme Court of Pennsylvania, 'If the privilege claimed by the witness be allowed, the matter is at an end. The claim of privilege and its allowance is properly no part of the evidence submitted to the jury, and no inferences whatever can be legitimately drawn by them from the legal assertion by the witness of his constitutional right.'"

Avoiding the seeming inconsistency of these cases, the Supreme Court in Grunewald v United States, supra,[2] noted:

"It is, of course, an elementary

---

[1] Raffel was tried for a violation of the National Prohibition Act. At his first trial, a prohibition agent testified that after searching a "drinking place," Raffel admitted it belonged to him. The accused did not testify and the jury reached no verdict. At the second trial, the agent again testified. Raffel this time took the stand and denied making the statement attributed to him. The court permitted his silence at the first trial to be used to impeach him.

[2] In that case, Max Halperin was one of the three petitioners. In 1952, he had been subpoenaed by a Brooklyn Grand Jury investigating corruption in the Bureau of Internal Revenue. Testimony of others had linked Halperin with a tax fixing ring. He was asked numerous questions including whether he was acquainted with Grunewald and whether he had held and delivered escrow money paid to Grunewald by others. Halperin, relying on the Fifth Amendment, refused

rule of evidence that prior statements may be used to impeach the credibility of a criminal defendant or an ordinary witness. But this can be done only if the judge is satisfied that the prior statements are in fact inconsistent. 3 Wigmore, Evidence, § 1040. And so the threshold question here is simply whether, in the circumstances of this case, the trial court erred in holding that Halperin's plea of the Fifth Amendment privilege before the grand jury involved such inconsistency with any of his trial testimony as to permit its use against him for impeachment purposes." [353 US 391, 418–419.]

The court then went on to say that Raffel v United States is not to be read as dispensing with this initial requirement or that it establishes, as a matter of law, that a prior claim of privilege as to a question later answered at trial "is always to be deemed to be a prior inconsistent statement, irrespective of the circumstances under which the claim of privilege was made." Raffel, the court continued, "did not focus on the question whether the cross-examination there involved was in fact probative in impeaching the defendant's credibility." Grunewald v United States, supra, 353 US 391, 420.

The court then turned to the question of credibility, having assumed that Halperin was subject to cross-examination impeaching his credibility, as is any other witness, and concluded that Halperin's claim of the Fifth Amendment privilege before the Grand Jury in response to questions that he answered at trial was wholly consistent with innocence.

Stewart v United States, 366 US 1, 3, 6 L Ed 2d 84, 81 S Ct 941 (1961),

represents an instance where accused stood silent at his first and second trials, but testified at his third. The court decided that the testimony given by Stewart at the last trial amounted to " 'gibberish without meaning' " and as a consequence no specific testimony existed that could be impeached.

This Court has said of Stewart:

"More recently, in Stewart v United States, 366 US 1, 6 L Ed 2d 84, 81 S Ct 941 (1961), the Supreme Court was faced with a situation almost identical to that now before us. There, the defendant, Stewart, took the stand in his own behalf after remaining silent in two prior trials upon the same indictment. On cross-examination, the prosecutor asked Stewart if this was not the first time he had elected to testify. The accused responded with gibberish as he had to other questions placed to him. A defense motion for a mistrial was denied upon the Government's representation that the jury was entitled to know of accused's prior silence. The Court held that the prior decisions to remain silent were not at all inconsistent with the defendant's election now to testify and the statements which he now made. Reversal was necessitated by the probable effect of the point upon the jury." [United States v Brooks, supra, at page 426.]

Significantly, the Stewart opinion contains this observation:

"In this Court, the Government concedes that the question put to the defendant about his prior failures to testify cannot be justified under Raffel, Grunewald, or any other of this Court's prior decisions. This concession, which we accept

to answer these questions, contending that his answers would tend to incriminate him. However, he repeatedly insisted before the Grand Jury that he was innocent. During the subsequent trial, Government cross-examined Halperin regarding some of the questions that had been asked him during the Grand Jury proceedings. His answer to each question was consistent with

innocence. Over objection, the Government was then allowed to bring out that he had pleaded his privilege before the Grand Jury as to these very questions. In his charge to the jury, the trial judge restricted this evidence as to credibility only, permitting no inference to be drawn from it as to innocence or guilt.

as proper, rests upon the Government's recognition of the fact that *in no case has this Court intimated that there is such a basic inconsistency between silence at one trial and taking the stand at a subsequent trial that the fact of prior silence can be used to impeach any testimony which a defendant elects to give at a later trial.*" [Emphasis supplied.] [Stewart v United States, 366 US 1, 5.]

That result is followed in the observations of this Court in United States v Jones, supra, at page 23:

". . . We might add there seems to be little utility in including an accused's refusals to answer in statements taken by military investigators. As we have noted, they cannot be used against him, as their only possible impact on court members is to create an impermissible inference of guilt from accused's reliance upon his rights. Hence, *they have no value as evidence* and, on the contrary, lead, as here, to commission of error." [Emphasis supplied.] [See also United States v Brooks, supra, at page 426.]

Appellate Government counsel have documented numerous cases indicating that the privilege is applicable in civilian cases (see Muir v Grier, 160 Cal App 2d 671, 325 P2d 664 (1958);

Hall Motor Freight v Montgomery, 357 Mo 1188, 212 SW2d 748, 2 ALR2d 1292 (1948); Barnhart v Martin, 327 Ill App 551, 64 NE2d 743 (1945)), and criminal cases as well—whether the witness be the defendant or not (see United States v Tomaiolo, 249 F2d 683 (CA2d Cir) (1957); State v Boscia, 93 NJ Super 586, 226 A2d 643 (1967); People v Boulahanis, 394 Ill 255, 68 NE2d 467 (1946); People v Luckman, 254 App Div 694, 3 NYS2d 864 (1938); and United States v Hoffa, 349 F2d 20 (CA6th Cir) (1965)).

But even if the privilege was not available to Morrison, under the circumstances of this case, it is evident that the law officer did not abuse his discretion in limiting that witness's cross-examination in this area. Plainly, the *fact* of pretrial silence is not inconsistent with subsequent trial testimony and, therefore, is not a proper vehicle for impeachment. Grunewald v United States; Stewart v United States; and United States v Brooks, all supra. The question before the Court is answered in the negative.

The decision of the board of review is affirmed.

Chief Judge QUINN and JUDGE FERGUSON concur.