UNITED STATES, Appellee

v

BOBBY L. YOUNG, Airman Third Class,
U. S. Air Force, Appellant

10 USCMA 97, 27 CMR 171

No. 11,575

Decided January 2, 1959

*Captain Norman K. Hogue* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Sam F. Carter, Lieutenant Colonel Ellis L. Gottlieb,* and *Major Donald C. Helling.*

*Major Fred C. Vowell* argued the cause for Appellee, United States, With him on the brief was *Lieutenant Colonel Robert W. Michels.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused and a companion in crime, Carl V. Moulton, Jr., were found guilty of committing an assault with a dangerous weapon, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928. They received identical sentences of a dishonorable discharge from the service, forfeiture of all pay and allowances, and confinement at hard labor for one year. The findings and sentence were approved by the convening authority and affirmed by a board of review. The cause reached this Court upon a petition alleging one assignment of error common to both accused and an additional error affecting the trial of the present petitioner. On the 12th day of August 1958, by an order of the Court, the sentence as to Moulton was set aside and a rehearing on it was ordered. Petitioner was not involved in that disposition because the second alleged error, if sustained, would require a setting aside of the findings.

We first dispose of the assignment of error which concerns this accused only. He contends he was deprived of adequate representation of counsel at trial for the reason that his lawyer represented conflicting interests and sacrificed him to benefit Moulton. The operative facts giving rise to this complaint are these: At the trial, amidst a mass of facts showing guilt, the Government established that Moulton was fighting with the victim; that accused proceeded to the final scene of the altercation and, upon solicitation of

Moulton, stabbed the victim in the side with a knife; that the accused immediately after the struggle exhibited the knife to a witness, pointed to the blood on the blade, and stated that he had just cut the victim; and that on the following morning he informed a witness of having cut the victim and at that time cleaned the telling evidence from the knife. The Government also offered into evidence a written pretrial statement made by the accused in which he admitted his participation in the fight and, for the most part, his version was cumulative of the prosecution's evidence. Particularly appropriate to this issue are the following statements found therein:

"... The American appeared to be holding MOULTON about to hit him, ... I pulled my knife out of its sheath and swung it at the American, but I didn't think I cut him. ... I looked at my knife then and saw a red stain on the point.

"The next morning I was in the room with my roommate LANE, when PAGE came in. I showed the knife to PAGE and LANE. I told them that I thought I cut a guy in the village the preceeding [sic] evening. I wiped the knife off at that time."

Neither of the two accused took the stand in their own behalf, no other witnesses were called by them, and the testimony as given by the Government witnesses and as strengthened by the

accused's pretrial statement stood unrebutted.

The same defense counsel was appointed to represent the two accused, and at trial he moved for a severance. The motion was based upon the fact that both accused had executed pretrial confessions and, if the two were tried jointly, those portions of the statement made by one which incriminated the other would be introduced into evidence and, even though limiting instructions could be given, the adverse testimony would be known by the court-martial members. The law officer heard arguments on the motion, and it was finally disposed of to the mutual satisfaction of all by deleting from each document any incriminating matter as to the co-accused. When defense counsel succeeded in accomplishing that objective, he withdrew his motion for severance.

After the taking of testimony was completed and during arguments prior to findings, defense counsel made the following statement:

". . . I don't think the defense can very well deny the fact that PFC Edwards was cut by a knife. I will go so far as to say that I don't think the defense can deny that perhaps the accused, Airman Young, was the one that had cut him; however, I would like to point out one essential fact, and that is the participation of Airman Moulton in this cutting."

Trial defense counsel then went on to state the reasons why he concluded Airman Moulton was not guilty of any offense greater than assault and battery. He said little in support of this accused except that, prior to his participation, the accused was standing behind Moulton and was hit in the head by a rock thrown by the victim. Appellate defense counsel now contend the argument made by trial defense counsel was a concession of accused's guilt of the offense alleged and that such admission denied him a fair trial.

The primary theory behind the contention made by the defense on appeal is that defense counsel's argument shows an irreconcilable conflict of interest between his two clients for which the present accused was made to suffer. We, however, do not follow that reasoning. We agree with the rule that the right to have the assistance of counsel is so fundamental and absolute that its denial invalidates the trial at which it occurred. But defense counsel cannot be expected to accomplish miracles and they must face up to the facts that are in a record. There are many facets to a criminal case, and the accomplishments of the attorney must be measured by the entire proceeding and not by just one incident. Merely because a lawyer who is representing more than one person in a joint trial selects tactics which are dictated by the state of the evidence is no indication he was hampered in his defense of any accused.

As we understand a conflict in interest, it means defense counsel cannot adequately represent one accused without prejudice to another. That is, he is not entirely free to exploit avenues of strength for one client because he may harm the other. It does not mean counsel cannot acknowledge and argue the relative weight of the evidence as it affects different individuals being tried at the same time. Surely, when the evidence of guilt as to one is substantial but to another is only borderline, he is free to move for a dismissal as to the latter upon the grounds of insufficiency of the evidence without being unfair to the former. Furthermore, his arguments on the merits must be tailored to meet the facts, and certainly a concession of that which is indisputable cannot harm an accused. In this connection, it is to be remembered that in military courts the court-martial members not only determine the facts but also impose the sentence. It is necessary that defense counsel keep this in mind and there is some merit in selecting defense tactics which, when a cause appears lost on the facts, will not alienate the court on sentence.

In the case at bar, the testimony that this accused was the knife wielder was overwhelming. Part of the evidence was furnished by this petitioner, for on two different occasions he had admitted its use. Without being intellectually

dishonest, counsel could not argue that the evidence on that point was weak, uncertain. confusing or not believable, and by his comment he did not undermine any theory of defense in the case. See United States v Walker, 3 USCMA 355, 12 CMR 111. He had done his best to keep damaging testimony out of the record, and he was partially successful as testimony which might have been admissible had the two accused been tried separately did not get before the court. His argument did not seek to shift blame or pit the word of one of his clients against the other. To the contrary, it would appear he recognized a possible avenue of escape for one accused and pitched his argument to lead the court to follow that route. His best chance to help either of his clients was to convince the triers of fact that. the Government having alleged the two participants were acting pursuant to a common intent, had failed to establish that one knew or could reasonably be expected to know a knife was going to be used by the other. His plan of defense had some merit, and if his tactics prejudiced this accused, the record does not so show, for defense counsel ended up with equal and fairly lenient results for both his clients. He made a good argument in extenuation and mitigation, and the court, in meeting out identical sentences, must have considered the offenders equally reprehensible. Cf. United States v Faylor, 9 USCMA 547, 26 CMR 327. The assignment of error is, therefore, overruled.

As previously indicated, the appeal of the co-accused resulted in an order by this Court setting aside the sentence and ordering a rehearing on punishment. Although I disagreed, my associates concluded the law officer committed prejudicial error by giving an improper instruction on the punishment which could be imposed. This accused is entitled to the same consideration. Accordingly, the sentence is set aside, and the record is returned to The Judge Advocate General of the Air Force for a rehearing on that aspect of the case.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

The thrust of trial defense counsel's closing argument to the court-martial was to persuade that body to find Airman Moulton guilty only of the lesser included offense of simple assault and battery. His only references to the accused in the course of that argument were as follows:

". . . I will go so far as to say that I don't think the defense can deny that perhaps the accused, Airman Young, was the one that had cut him; . . . Airman Young was standing in back of Airman Moulton when the rock was thrown by Edwards, and it hit Airman Young on the side of his head. Whether he felt that it was necessary to take this action I do not know, but that is the testimony we have before us."

In United States v Faylor, 9 USCMA 547, 26 CMR 327, we found prejudicial error where the defense counsel favored one of his clients over the other in his argument on the sentence. In the more aggravated situation now before us, the favoritism ran to both findings and sentence. See also United States v Moore, 9 USCMA 284, 26 CMR 64. And in United States v Lovett, 7 USCMA 704, 23 CMR 168, we said:

"One of the fundamental rights of an accused in a criminal prosecution is his right to counsel. If the right has any meaning, counsel must not only be qualified, but must, of course, represent his client with undivided loyalty. United States v Hayman, 342 US 205, 72 S Ct 263, 96 L ed 232 (1952); Glasser v United States, 315 US 60, 62 S Ct 457, 86 L ed 680 (1942); Canon 6, Canons of Professional Ethics of the American Bar Association. The Manual for Courts-Martial, United States, 1951, refers to the matter as follows:

'. . . He [defense counsel] will guard interests of the accused by all honorable and legitimate means known to the law. It is his duty to undertake the defense regardless of his personal opinion as to the guilt of the accused; to disclose to the accused any interest he may have in connection with the case, any ground of possible dis-

qualification, and any other matter which might influence the accused in the selection of counsel; to represent the accused with undivided fidelity, and not to divulge his secrets or confidence.' [Paragraph 48c.]

"Counsel must not represent conflicting interests. So strong is the prohibition that, despite the unquestioned purity of counsel's motives, any doubt concerning equivocal conduct on his part 'must be regarded as having been antagonistic to the best interests of his client.' United States v McCluskey, 6 USCMA 545, 550, 20 CMR 261."

I would reverse the findings of the board of review and return the record of trial to The Judge Advocate General of the Air Force for a rehearing.