UNITED STATES, Appellee

v

RANCE W. TACKETT, Private First Class, U. S. Marine Corps, and HENRY P. LORENTZ, Private, U. S. Marine Corps, Appellants

16 USCMA 226, 36 CMR 382

No. 19,076

April 29, 1966

*Lieutenant Paul Gardner, Jr.,* USNR, argued the cause for Appellants, Accused.

*Lieutenant Jean E. Van Slate,* USNR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Daniel F. McConnell,* USMC.

KILDAY, Judge:

## I

Their involvement in certain events at Camp Pendleton, California, on the night of October 28, 1964, led to charges against both accused for violation of a lawful general order, and rape, contrary to Articles 92 and 120, Uniform Code of Military Justice, 10 USC §§ 892 and 920, respectively. Tried in common by a general court-martial convened at that base, they pleaded not guilty. With regard to the Article 92 offense, which involved possession of alcoholic beverages, they were convicted as charged. As to the other count, the two were found guilty of the lesser included offense of assault with intent to commit rape, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The court-martial sentenced both accused to bad-conduct discharge, total forfeitures, and confinement at hard labor for three years. In addition, accused Tackett was sentenced to reduction to private.

The findings and sentence as to both men were approved by the convening authority and affirmed by a board of review in the office of The Judge Advocate General of the Navy, except that the board reduced their terms of confinement to eighteen months. Thereafter, this Court granted the accused's petitions for review in order to consider three issues.

## II

Appellate defense counsel candidly acknowledges that the issues concern only the findings of assault with intent to commit rape. We agree. Although the accused pleaded not guilty to all offenses, their guilt of the Article 92 violation involving beer was really not contested. The Government's evidence as to that offense was undisputed and, in fact, compelling. Indeed, accused Lorentz judicially admitted his guilt in this regard

from the witness stand and, as to accused Tackett, in addition to the other uncontroverted evidence, the court-martial was furnished with his pretrial statement in which he confessed to the Article 92 offense. Accordingly, we need give no further consideration to that finding.

The accused's convictions for assault with intent to commit rape, however, are a different matter. The Government's case with regard thereto is strong and the defense frankly concedes that the evidence of record will substantially support the findings, but the sufficiency of the evidence as to assault with intent to rape is not the question on this appeal. The guilt of both accused of that offense was vigorously contested, and the question we must decide is whether, in light of the circumstances into which we inquire, the accused received a fair trial on this serious crime. Some development of the evidence as to the Article 134 offense will be of aid in our consideration of the case.

## III

The Government's proof showed that on the night in question the victim was in a car parked near a barracks at Camp Pendleton. She had gone there with one Shields—a Marine with whom she had been intimate previously on numerous occasions—and had engaged in a voluntary act of intercourse with him. The girl testified that thereafter a group of Marines emerged from the vicinity of the barracks[1] and approached the car, making their purpose plain in vulgar terms. She voiced her fear to Shields and told him she wanted to leave. He, however, giving no indication whatever that he knew any of the group, expressed misgivings of his own as to the situation and left with a comment about getting "the OD."[2]

After Shields' departure, the girl testified, she was assaulted by the

---

[1] Shields, as well as the two accused and others, shown by the evidence to be involved, were billeted there.

[2] There is no indication in the record that Shields raised any alarm whatever upon leaving.

group.[3] She specifically identified the two accused, and claimed they entered the car. According to her version of the incident, Lorentz threatened her life and choked her with a cloth. Also, a hand was put over her mouth to stifle her outcries. Tackett pulled her clothing off, ripping her slacks and underclothes in the process. All this was without her consent; she struggled and screamed, and scratched her assailants. It was further shown that persons from another barracks, hearing the disturbance, came to the girl's aid.

Other evidence put before the court-martial bolstered the prosecution's case. For our purpose, however, the foregoing provides a sufficient backdrop against which to consider the evidence advanced in behalf of the accused.

The defense did not dispute that either man had gone to the car, where they knew Shields' "girlfriend" to be. Neither was there any contest as to their amatory purpose in doing so. Each accused, however, according to his version of the incident as put before the court members, steadfastly denied any want of consent or that he had used any force. This position was bolstered by an attack on the alleged victim, for the defense evidence depicted the complaining witness as a person of extremely loose morals. Her reputation as such was well known to the accused, and her alleged promiscuity, according to them, extended to sexual activity with a number of men in succession.

Thus, an issue depending in large part on credibility was raised as to the guilt of both accused. However, the stories of the two—although each absolved himself—differ in important particulars.

The accused Lorentz, testifying in his own behalf, stated that when he learned of the presence of the alleged victim near his barracks on the night in question, he and several others went outside. Due to her reputation, all of the group had gone out for the same purpose. Lorentz admitted he got in the car where he said the girl was sitting with her arm around Tackett. The latter thereupon got out of the auto, apparently angry, Lorentz said, "because I came in and broke up whatever he had going for him." As Lorentz was "propositioning" the girl, he said another of the group—one Pombert—got in the car. She indicated her willingness to comply with their desires and started to remove her slacks. Pombert and Tackett were helping to take her clothes down, Lorentz claimed. He flatly denied making any threats or using any force, and up to this point the girl had neither screamed nor struggled. Thereupon the adventure was interrupted, Lorentz testified, when the headlights of another automobile driving into the area shined into their car. They all ducked, and the girl for the first time started to scream, saying " 'Oh, no, I'll get caught,' " or words to that effect. She had participated voluntarily and made no objection until the appearance of the other car, but her screams at that point brought men from the next barracks.

Pombert also testified for the defense regarding his involvement.[4] Generally, he corroborated Lorentz's testimony that the girl had been cooperative until the headlights shined into the car. He admitted helping to remove her slacks. Pombert also stated that Tackett was present at that time and assisted him in unclothing the girl.

Tackett did not take the witness stand at trial. The Government, however, without objection, had introduced his written pretrial statement, given under oath. According to Tackett's statement, he was in the barracks on the night in question and knew the alleged victim was outside with Shields. When the latter came in boasting of his conquest, Tackett,

---

[3] She claimed penetration occurred, but the court-martial's finding resolved that disputed matter favorably to the accused.

[4] He had already been tried by general court-martial and acquitted on the same charges as those placed against the two accused herein.

Lorentz, and others decided to go outside. Tackett knew the girl, and sat down in the car to talk to her. He related that "I was going to talk my way into some of this is what I was really trying to do." In the course of his own overtures, he claimed Lorentz got in the car and "started messing around with her. She didn't like that." She started to fight with Lorentz, Tackett said, so he left and went back into the barracks. As he put it:

". . . that's when I got out of the car, cause I didn't want nothing to do with that. I didn't want to force her to do it. Nobody said anything about forcing her to do it, you know. They just said 'She'll do it', . . . so we went out there. . . .

. . . . .

". . . I didn't want to force her to do anything. I was just talking to her. I knew her, she knew me. Hell, I wouldn't want to do that to her."

Tackett believed the girl would be willing and absolutely disclaimed that he ever intended any force. At the first indication thereof he disassociated himself and left. Although he exculpated himself, Tackett further related that, as he got out of the car, Pombert got in. Lorentz had told the girl in gutter terms that he intended to have relations with her. He was "crazy," and was trying to force himself on her but she resisted his advances. Lorentz and Pombert were:

". . . messing around, trying to—trying to get her to do it and then she screamed and somebody put their hand over her mouth."

### IV

The first issue with which we are concerned involves the propriety, under all the circumstances, ▆▆▆▆▆▆ of prosecuting the two accused in a common trial at which both were represented by a single appointed defense counsel. As we view the situation, although no single factor by itself resulted in such, the totality of circumstances which we consider hereinafter rendered the court-martial unable to fairly evaluate the guilt of the accused. Hence, we conclude this issue must be resolved favorably to them, and we therefore reverse their convictions for assault with intent to commit rape.

The theory of defense as to Lorentz, from his testimony, Pombert's corroboration, and the other evidence, conceded his presence at the scene throughout the episode until the disturbance brought others to the scene.[5] It was urged in his behalf, however, that the situation was entirely consensual, from beginning to end; that the alleged victim only cried out and made a false accusation upon the realization that her voluntary activity would be discovered.

Although Tackett did not testify, his pretrial statement was before the court-martial, and it has long been settled that exculpatory portions thereof are sufficient to raise an issue. See United States v Johnson, 3 USCMA 209, 11 CMR 209, and allied cases. Tackett also completely denied force, at least to the extent of his participation; his defense being based on the version of the incident he gave in his statement. Thus, Tackett's theory was, and defense counsel argued at trial, that he left the car and the scene when Lorentz got into the auto; his involvement wholly ceased at that point.

The version of the incident as related by Lorentz and Pombert was, of course, admissible without limitation. Contrary to Tackett's statement, it placed the latter at the scene throughout, and named him as an active participant in taking off the girl's clothes. To be sure, the story related by those two, if credited *in toto*, would absolve not only Lorentz but Tackett as well. However, the difficulty is that the triers of fact could, on the evidence, fairly conclude that their testimony was not entirely true. If the court-martial rejected their self-serving assertion that the alleged victim had consented and made outcry with a false accusation

---

[5] Indeed, he was found in the car with the girl and apprehended.

only upon fear of discovery when another car drove in, then the involvement they admitted would almost certainly seal Lorentz's guilt, and with it Tackett's. In that connection, as shall be seen hereinafter, the latter's statement heavily undercut their exculpatory contentions. Moreover, as opposed to the version to which Pombert and Lorentz testified, the girl's story was corroborated in many respects. It could be found that they had not explained satisfactorily her disheveled and hysterical appearance, her physical condition, nor her ripped clothing. Likewise, no witness other than those two said anything about another car driving in at the critical time so as to cause any fear of discovery, and the witnesses who responded to the disturbance would have no motive—as the alleged victim might—to falsify on that score.

Tackett's version, on the other hand, would not suffer from any shortcomings that might be found in that regard. His story removed him from participation and from the scene at such point that neither the girl's later appearance, physical condition, the damage to her clothing, the claimed arrival of another auto, nor other factors, would have the same damaging impact on his theory of defense. Yet the testimony of Lorentz and Pombert belied Tackett's version of withdrawal. It placed him on the scene throughout, and identified him as an active participant in such undertakings and at a juncture that would place a seal on his guilt as well as that of Lorentz if the court members were to disbelieve the latter.

Similar difficulty is encountered when Lorentz's guilt or innocence is weighed against Tackett's statement. To be sure, we are aware in this connection that the law officer carefully admonished the court-martial to consider the pretrial statement solely as to the man who made it; that the same was not to be considered in any way against Lorentz; and that the findings against the two accused were to be resolved separately and independently. As a general rule, and absent special circumstances, it is held that such cautionary instructions are efficacious. **United States v Borner**, 3 USCMA 306, 12 CMR 62. A court is ordinarily presumed to follow the instructions of the law officer, as the board of review pointed out in its opinion in the case at bar. **United States v Moreno**, 10 USCMA 406, 27 CMR 480. Limiting instructions in this and other areas, however, despite statements of the triers of fact of their ability to follow the same,[6] do not uniformly insure that they are able to do so. See **United States v Yanuski**, 16 USCMA 170, 36 CMR 326; cf. **United States v Baca**, 14 USCMA 76, 33 CMR 288; and **United States v Oliver**, 14 USCMA 192, 33 CMR 404.

In the case at bar, it is difficult to accept the conclusion that the court members were able to heed the law officer's cautionary admonition. The trouble with applying that approach here is that trial counsel, in his closing argument, repeatedly ignored the limiting instructions of the law officer. The prosecutor—on numerous occasions in the course of his prolonged argument—specifically invited the court members, in assessing the truth of Lorentz's and Pombert's testimony from the witness stand, to compare their story with Tackett's version in his pretrial statement. Indeed, appellate Government counsel acknowledge in their brief the:

"... potential prejudice to Lorentz from the statement of Tackett and the over zealous advocacy of trial counsel in his closing argument in urging the court to compare the statements of Tackett as against the testimony of Lorentz. ..."

They concede this improper argument of trial counsel was error, but seek to avoid any impact therefrom on the guilty finding as to Lorentz in light of the other evidence of record against him.

True enough the other evidence against Lorentz was impressive. We are unable, however, to accept the

---

[6] We are not unaware that the court members so stated in the instant case.

230

Government's contention that reliance by the court members on the contents of Tackett's statement could not have been critical as to Lorentz's guilt. Quite to the contrary, it cut into the very core of his theory of defense and pointed the finger of guilt directly at him. Tackett's statement indicated the girl had resisted Lorentz from the outset, and put the lie to the latter's assertion that he had used no force. Likewise, the force Tackett ascribed to his co-accused undercut the latter's testimony that the girl probably ripped her own clothes in hastily re-dressing. In addition to confuting the claim of consent, the statement further negated Lorentz's explanation that the girl—who admittedly screamed —did so only when she believed she would be "caught" in a compromising situation with a number of men. Tackett's story indicates the girl was not undressed when she started to scream, but cried out long before the situation had progressed to the point Lorentz claimed. Moreover, the pretrial statement is significantly silent as to the arrival of another car at the time the girl's outcries commenced. Instead, it ascribes a different and incriminatory basis to her screams and to Lorentz's and Pombert's action in stifling them.

The girl had told one story; Lorentz and Pombert another. Aside from them, the only eyewitness commentary as to what transpired in the auto was put before the court-martial in Tackett's statement. When it is weighed in the pans of the scales against Lorentz, as the court members were repeatedly urged to do, the damage to the latter's theory of defense is manifest.

Accordingly, it is clear that, as the case was given to the triers of fact, the theories of the two accused operated to undermine each other. The testimony of Pombert and Lorentz refuted Tackett's claim of early withdrawal without participation, while the latter's story flatly controverted not only his co-accused's contention that the situation was a consensual one without force, but his attempted explanation of other damaging evidence.

The evidence being in such posture,

the single appointed defense counsel who represented both accused at trial was in the position of vouching for the testimony of Pombert and Lorentz—damaging though it was to Tackett—in sustaining the theory of defense as to one of his clients. At the same time, in supporting his other client's theory, he was relying on Tackett's statement which, as we have seen, exculpated him but incriminated his co-accused. That this situation presented difficulties for defense counsel at trial seems evident.

Indeed, defense counsel himself recognized the problem. In presenting closing arguments to the court members in behalf of his clients, he commented that, being charged with the defense of two individuals, and in light of the pretrial statement:

". . . I find myself in an extremely difficult position.

. . . . .

"If it had been possible, the defense counsel would have preferred to try these two accused separately, simply on account of this statement. However, under all the facts in this case, this was impossible, and I must rely upon the integrity and the ability of the court to apply this document, direct statements, or any admissions or anything that might have been made in there by Tackett against Tackett only and to ignore hearsay statements as to what Lorentz might have done, or Lorentz has said. . . ."

Yet defense counsel did not move for a severance at trial.

Ordinarily, a failure to request such relief at that level bars consideration of the matter on review. United States v Bodenheimer, 2 USCMA 130, 7 CMR 6; see also United States v Oliver, 14 USCMA 192, 33 CMR 404. However, as was recognized in the *Bodenheimer* case, that rule is not necessarily applicable in every case regardless of the circumstances.

In the case at bar, an affidavit by defense counsel, considered by the board of review, indicates he had acted as counsel for Pombert in addition to the two accused before us. He had,

prior to trial, attempted to obtain a severance but the same was apparently refused. Thereupon, by the device of a request for enlisted personnel on the court-martial, defense counsel effected a severance as to Pombert; obtained an acquittal as to him as we have previously noted; then used Pombert as a defense witness in behalf of the present accused. Although we are of the view, as the case developed, that defense counsel should have attempted at trial to obtain a severance, we are reluctant, in view of the above facts and others mentioned in his affidavit, to saddle responsibility on his shoulders. His was a most difficult undertaking, and we should not be understood as holding defense counsel's representation of the accused was inadequate. No small portion of responsibility must be borne by trial counsel, for his overzealous and admittedly improper argument. So, too, although the law officer may not have been aware of pretrial efforts as to severance, the situation in the instant case is unlike that in United States v Oliver, supra. There, different counsel represented the two accused at trial, but not so here. Likewise, in *Oliver*, there was no indication the law officer was put on notice of any request or need for severance. In the case at bar, however, despite the absence at trial of a motion for severance, the law officer was necessarily aware of the situation as it was unfolded before him. Here the problem involved not merely a common trial, but common representation of the two accused, the difference in theories of defense between them, the complication injected by the pretrial statement and the necessity for a limiting instruction thereon, and the manner in which trial counsel repeatedly invited the triers of fact to utilize the statement in his erroneous and uncurtailed argument. The law officer along with the others should have seen the danger, under all the circumstances, that the court members might rely on one accused's theory of defense to undercut the other's. While he gave limiting instructions with regard to Tackett's statement, he said nothing as to the erroneous and

misleading arguments made by trial counsel, and he took no further action even after defense counsel's statement about his "extremely difficult position."

We do not assess "blame" against any individual participant in this drama. Neither do we retreat from the general rule that failure to request severance bars appellate review of the matter. See United States v Bodenheimer, and United States v Oliver, both supra. But, as we have noted, this case is far more complex than that. We are convinced, under the particular facts here involved, that the case at bar falls within the exception mentioned in *Bodenheimer*, and conclude the absence of a motion for severance at trial should not result in the application of waiver.

We hold no more than that the two accused, tried in common and represented by a single appointed defense counsel, did not, in light of their theories of defense, the evidence, the manner of trial counsel's use of the pretrial statement in his improper argument, and all the circumstances peculiar to the instant case, receive a fair trial. Cf. Ashe v McNamara, 355 F2d 277 (CA 1st Cir) (1965); United States v Cupo, — F2d — (CA DC Cir) (decided March 21, 1966) (slip opinion at pages 6 and 7); United States v Oliver, supra; United States v Baca, supra; United States v Young, 10 USCMA 97, 27 CMR 171; United States v Borner, supra; United States v Bodenheimer, supra; United States v Evans, 1 USCMA 541, 4 CMR 133.

V

Appellate defense counsel complains, in the second assignment of error upon which we granted review, that it was error for trial counsel to argue, in summation, that he had available additional witnesses to bolster the prosecution case; that such argument amounted to "unsworn corroborative testimony." In light of the disposition we order as a result of our holding on the first issue, no extended discussion of this matter is necessary.

Taken in context, the Chief Judge

and I are of the view that the questioned argument constituted advocacy rather than testimony; that he was not asking the court members to rely on anything other than the evidence he had actually adduced. And, apparently, from a comment with reference to the matter made by defense counsel in his closing argument, he interpreted it in the same fashion. Judge Ferguson, however, is of the view that the reference was an invitation to base a conviction on matters outside the record, and as such was clearly erroneous.

In any event, counsel unnecessarily enter a dangerous area when mention is made, as it was here, that other witnesses could have been brought in. Such statements, even though they may not be misunderstood, are without justification. They serve no valid purpose and often invite disaster. We strongly admonish counsel to exercise care in arguments to avoid making such comments. See Kitchell v United States, 354 F2d 715 (CA 1st Cir) (1966); United States v Anderson, 12 USCMA 223, 30 CMR 223; United States v Beatty, 10 USCMA 311, 27 CMR 385.

## VI

We may likewise treat shortly with the final assignment, which asserts it was error for the prosecution to extract testimony from an investigator that Lorentz had refused to make a pretrial statement without consulting with counsel. Appellate Government counsel candidly concede it was error to show "that an accused relied upon his rights" in refusing to make a statement. See United States v Jones, 16 USCMA 22, 36 CMR 178; United States v Andrews, 16 USCMA 20, 36 CMR 176; United States v Workman, 15 USCMA 228, 35 CMR 200; and authorities therein cited. The Government argues, however, based on those cases, that no specific prejudice flows from this error.

Because reversal is otherwise required as to both accused, we need not assess this error for prejudice. As with the preceding matter, however, we emphasize that errors of this sort simply must be avoided. The law is not in doubt in either area, and there is no reason why the exercise of more care by those connected with court-martial trials cannot eliminate the necessity for us to consider such errors.

## VII

For the foregoing reasons, the findings of guilty as to both accused for assault with intent to rape under Article 134 of the Code cannot stand. The decision of the board of review, therefore, is reversed, and the record is remanded to The Judge Advocate General of the Navy. The board of review may reassess an appropriate sentence for the Article 92 convictions, which we affirm, or a rehearing may be ordered on the Article 134 offenses and the penalty.

Judge FERGUSON concurs.

QUINN, Chief Judge (concurring in part and dissenting in part):

The foundation for the majority's determination that the accused were denied a fair trial rests upon two major conclusions both of which, in my opinion, are unsupported by the record of trial. The first conclusion is that there is a basic conflict between Tackett's pretrial statement and the testimony of Lorentz and Pombert. The majority read Tackett's statement as indicating he was not present at the scene throughout the incident, but rather that "he left [the car] and went back into the barracks" before Lorentz started his activities in the car. That is not the import of Tackett's statement. He leaves no doubt that after he got out of the car he still remained in the immediate vicinity. Thus, he describes Lorentz' and Pombert's activities in the car *after* he got out, including the fact that one of them put his hand over the girl's mouth when she screamed. Tackett fixed the scream as the moment he and two others in the group started from the area for the barracks. That time is consistent with

Lorentz' testimony as to the sequence of events.

Before considering other factors leading to the majority's conclusion there was a basic conflict between the two accused, it is important to point out that Tackett's statement as a whole matches Lorentz' testimony in implying that the girl was not really intransigent in her resistance to Lorentz. Thus, in answer to a question by the agent as to whether the girl was "struggling," Tackett said: "She wasn't struggling. What I mean, she was just trying to get away from him. She didn't want him to kiss her or something." The two also agree that Tackett left the car when Lorentz entered it; and, further, that when Lorentz got into the car he started "messing around" with the girl. The general picture presented by Tackett's pretrial statement is, therefore, consistent with, not opposed to, the trial testimony by Lorentz and Pombert. The one particular in which they do not coincide, and which the majority say demonstrates a basic disagreement which should have been manifest at the very outset of the trial, is what Tackett did after he left the car. As I read Tackett's statement on the point, it does not parallel the trial testimony, but it is not antagonistic or substantially inconsistent with it.

Lorentz testified that while he was engaged with the girl he thought Tackett reached through the door and "helped her take . . . down" her slacks. Tackett's statement is silent as to what he did from the time he left the car until the time the girl screamed. As noted earlier, however, he left no doubt he remained close enough to the car to see and hear what Lorentz did and said to the girl. The fact that he did not admit taking part in the removal of her slacks while he stood outside the car does not demonstrate that his pretrial statement is in conflict with Lorentz' testimony; it merely shows his statement was incomplete. Even trial counsel, who is charged with flagrant misuse of Tackett's statement, did not refer to any alleged inconsistency on this point between the statement and

234

the testimony by Lorentz and Pombert. Also, defense counsel's comment about representing the two accused was not due, as the majority maintain, to any feeling on his part that there was a basic inconsistency in his defense. He was disturbed only by the expansiveness of the hearsay in Tackett's statement. His entire comment on the matter is as follows:

"Now, Gentlemen, I find myself in an extremely difficult position. I am charged with the defense of two individuals, and at this point I am confronted with the fact that Prosecution Exhibit 4 is a statement given by the accused, Tackett to the CID. Gentlemen, this statement is admissible against Tackett and Tackett only. In this statement are all sorts of hearsay, garbage, allegations against Lorentz, Handy, Westling, Shields, Orbeck, Howard, Pombert, and who knows what not.

"Now, you will be instructed and have already been instructed, that this statement may be used against Tackett and no other. Now, this is an extremely hard thing to do, Gentlemen. I realize you will do the absolutely honest best you can to apply the contents of this exhibit against Tackett and to ignore it insofar as Lorentz is concerned. But believe me, this is going to be all mighty difficult.

"If it had been possible, the defense counsel would have preferred to try these two accused separately, simply on account of this statement. However, under all the facts in this case, this was impossible, and I must rely upon the integrity and the ability of the court to apply this document, direct statements, or any admissions or anything that might have been made in there by Tackett against Tackett only and to ignore hearsay statements as to what Lorentz might have done, or Lorentz has said, or Shields, or Pombert, or Westling, or Handy, or Orbeck, or who else?"

Apparently, defense counsel did not realize he could move to mask over all the inadmissible parts of Tackett's

pretrial statement.[1] His failure to make the motion, however, does not mean that his representation of Tackett and Lorentz was in conflict. In other words, Tackett's statement did not present an irreconcilable obstacle to his representation of both accused. Instead, it presented merely a question as to the effect of Tackett's statement on the court members in their deliberation on Lorentz' guilt or innocence. That question is entirely different from the propriety of defense counsel's representation of both accused. So far as the conflict issue is concerned, I am satisfied there was no impropriety whatever in defense counsel's representation of Lorentz and Tackett.

As to the effect of Tackett's statement, the second of the majority's conclusions, I share the view that not all of it should have been admitted in evidence. Indeed, since the law officer is responsible for admitting matter in evidence, it would have been appropriate for him, on his own initiative, to have the inadmissible portions of the statement properly masked. However, the failure to follow the preferred course of conduct is no reason to reverse an otherwise valid conviction. In the parts material to this issue, Tackett's statements about Lorentz were not much different from Lorentz' own testimony.

Tackett said he got out of the car because Lorentz "started messing around" with the girl. Lorentz testified to exactly the same act; he said, "we [meaning Pombert and himself] . . . started messing around." Tackett indicated that while Lorentz and Pombert were "messing around," the girl screamed and someone put a hand over her mouth. Lorentz admitted that the girl "all of a sudden . . . started screaming." Lorentz testified that the only reason he went out to the car was because he had heard of the girl's reputation. Tackett said the same thing and added: "Nobody said anything about forcing her to do it." In answer to a specific question, Tackett denied that Lorentz said he was going to rape the girl; on the contrary, said Tackett, he "asked her for some or something." Lorentz testified to the same effect; he said he was "propositioning" the girl. Finally, Tackett said he did not see Lorentz try to choke the girl with a piece of cloth. Lorentz denied he attempted any such act. In sum, Tackett's pretrial statement was neither so incriminatory of Lorentz, nor so at variance with Lorentz' testimony, as to justify the conclusion that the court members would ignore the law officer's repeated instructions to disregard all Tackett's references to Lorentz. Paoli v United States, 352 US 232, 1 L ed 2d 278, 77 S Ct 294 (1957); United States v Oliver, 14 USCMA 192, 33 CMR 404.

I agree with the discussion in point V of the majority's opinion as to trial counsel's reference to other evidence available to him. As to the matter mentioned in point VI of the opinion, any adverse influence the inadmissible evidence might have had upon the court members was fully dissipated by Lorentz' own testimony and the other evidence. United States v Andrews, 16 USCMA 20, 36 CMR 176.

In my opinion, the record of trial demonstrates that both accused received a fair trial, free from any error presenting a fair risk of prejudice to any fundamental right. I would, therefore, affirm the decision of the board of review.

---

[1] Defense counsel's statement that a severance was not obtainable merely because Tackett's statement implicated Lorentz is well-founded in law. United States v Borner, 3 USCMA 306, 310, 12 CMR 62.