UNITED STATES, Appellee

v

PRENTICE E. STEGAR, JR., Private,
U. S. Army, Appellant

16 USCMA 569, 37 CMR 189

No. 19,681

March 24, 1967

Captain John Kagel argued the cause for Appellant, Accused. With him on the brief were Colonel Daniel T. Ghent, Major David J. Passamaneck, Captain Frank J. Martin, Jr., and Captain James A. Buttry.

Captain Robert E. Davis argued the cause for Appellee, United States. With him on the brief were Colonel Peter S. Wondolowski, Lieutenant Colonel David Rarick, and Lieutenant Colonel Francis M. Cooper.

## Opinion of the Court

FERGUSON, Judge:

Tried by general court-martial convened at Fort Dix, New Jersey, by the Commanding General, U. S. Army Training Center, Infantry, the accused was convicted of rape, in violation of Uniform Code of Military Justice, Article 120, 10 USC § 920. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for seven years. Intermediate appellate authorities affirmed, and we granted accused's petition for review upon the assignment:

"PREJUDICIAL ERROR OCCURRED WHEN THE TRIAL COUNSEL WAS PERMITTED TO CROSS-EXAMINE THE ACCUSED AT LENGTH ABOUT HIS REFUSAL TO INCRIMINATE HIMSELF PRIOR TO TRIAL."

I

The evidence for the Government tends to establish that accused and several other Negro soldiers came upon Private M sitting with a male acquaintance near the Fort Dix Noncommissioned Officers' Club. Restraining the acquaintance, the group seized Private M, forced her to accompany them to a nearby gully, and there raped her. Her cries of protest and outrage were overheard by another soldier who rushed to her assistance, causing her assailants to flee. He identified the accused as being engaged in intercourse with M when he arrived on the scene. Accused's hat was also found nearby, and, when apprehended, his trousers bore grass stains.

The victim testified there was one man in the group who "acted as if he didn't want to go along with it" and apparently wished to help her. However, there "was nothing anybody could do" in view of the number assaulting

570

her. She was, however, unable to identify anyone involved in the attack.

Accused was twice interviewed by criminal investigators. The first session was unproductive. Four days later, he executed a statement after proper warning in which he denied any knowledge of an assault on Private M. At the trial, however, he testified in his own behalf and conceded he had witnessed the attack. Stegar declared that, in answer to M's companion's request, he went down to the scene of the rape and attempted to rescue her from her attackers, including one Killion. Unsuccessful, he knelt beside her and she asked him to see she was not hurt. Thereafter, he thought he saw a military police vehicle approaching and fled the scene. At some point, he lost his hat. His pretrial statement denying any knowledge of the offense was made pursuant to an agreement with his companions to see that none were involved in the matter. The denial, he said, came from a sense of "togetherness." On cross-examination, the trial counsel delved into his pretrial silence concerning these events, as follows:

"Q. What story did you tell Mr. LaMastra at that time?

"A. I didn't tell him no story. He told me a girl had been assaulted and things like that and said I was the one who did it.

"Q. He told you you were the one; did you deny this?

"A. *I didn't say nothing, sir.*

"Q. How long did you spend with Mr. LaMastra on that occasion?

"A. Roughly a half hour.

"Q. *And you didn't say anything throughout the entire course of that conversation?*

"A. *As far as this case, no, sir.*

"Q. Now, you were again questioned by Mr. LaMastra some four days later?

"A. Yes, sir.

"Q. *Did you sign any statement at that time?*

"A. *No, sir.*

"Q. Did Mr. LaMastra indicate that anybody had said you were the person who had done it?

"A. Yes, sir.

"Q. *Why didn't you tell Mr. La-Mastra what actually happened then?*

"A. *Sir, I know whenever things like this happen they try to get you to say something, sir.*

"Q. *You didn't have anything to hide, did you?*

"A. *No, sir.*

"Q. *Then why didn't you tell your story? You were in confinement at this time, weren't you?*

"A. *Yes, sir.*

· · · ·

"Q. *But you never, you never came forward and said it wasn't you, but it was Killion that committed this rape until just here and now.*

"A. I have told my defense this, yes, sir.

Q. *You never told any other authorities?*

A. *No, sir.*" [Emphasis supplied.]

In his final argument, trial counsel contended:

". . . I ask you to consider this. *Consider the extreme unlikelihood of somebody knowing that somebody else has committed a crime of which you are accused not coming forward, particularly, gentlemen, particularly when that someone is supposed to have an agreement with you that they were going to all say the same story, and then you later found out that someone you are trying to protect has not abided by that agreement. I don't think it is very reasonable that any man would sit in the stockade, come to trial, without first letting it be known that this was the situation.*" [Emphasis supplied.]

In his final instructions, the law officer referred to accused's cross-examination and advised the court:

"You have been informed, gentlemen, that on the night of 20 August, on the morning of 21 August, and later on at the Article 32 investigation in this case, Private Stegar refused to make any statement about this incident. I must instruct you,

**571**

gentlemen, that you cannot treat this silence as in any manner being an admission of guilt. The very valuable right that the law gives to us all not to be compelled to incriminate ourselves but to remain silent when accused of crime, would be meaningless if such a right could be asserted only at the risk of people subsequently reading into it, an assertion of that right, an admission of guilt. I mention this to you to point out that not only does the law prohibit drawing such an inference but that it is also illogical to draw such an inference."

The Government urges that the trial counsel was not attempting to expose pretrial silence during his cross-examination of the accused but a "pretrial position" of the accused in denying all knowledge of the assault on M. Assuming the presence of error, however, it also argues there was no specific prejudice to the accused's substantial rights. We reject both contentions.

First, it is crystal clear from the record that trial counsel did not merely seek to establish a prior inconsistent statement by the accused as impeaching his trial testimony. True, he made reference to this matter, but this statement was taken four days after accused's initial interview during which he had remained silent. Trial counsel clearly addressed himself to this earlier period and repeatedly made known to the court the fact accused had made no statement on this occasion. He expressly inquired whether accused had denied guilt at this initial contact with the investigator. Again, as to the later interview itself, he repeatedly asked why accused had not made known the facts; whether he was then attempting to hide his guilt; and, finally, brought out accused "never came forward and said it wasn't you, but it was Killion . . . until just here and now." It was thus expressly and repeatedly brought to the court's attention that accused, before his trial, "never told any other authorities" but remained silent as to the subject matter of his testimony at the trial.

Nor did the matter rest there. In his final argument, as we have noted above, the prosecutor once more expressly referred to the matter and pointedly commented on "the extreme unlikelihood of somebody knowing that somebody else has committed a crime of which you are accused not coming forward." It may be correct to say trial counsel sought to impress the court members with the accused's "pretrial position" but that position was, in fact, Stegar's pretrial silence concerning the matters to which he testified at the trial.

This Court has repeatedly condemned reference at the trial to an accused's pretrial exercise of his right to remain silent on the basis of the very real danger that court members will infer guilt therefrom. United States v Tackett, 16 USCMA 226, 36 CMR 382; United States v Jones, 16 USCMA 22, 36 CMR 178; United States v Andrews, 16 USCMA 20, 36 CMR 176; United States v Workman, 15 USCMA 228, 35 CMR 200; United States v Russell, 15 USCMA 76, 35 CMR 48; United States v Kemp, 13 USCMA 89, 32 CMR 89.

We spoke again of the matter in United States v Kavula, 16 USCMA 468, 37 CMR 88, and once more emphasized the accused's pretrial silence is inadmissible against him for any purpose. See also Grunewald v United States, 353 US 391, 1 L ed 2d 931, 77 S Ct 963 (1957), and Fagundes v United States, 340 F2d 673 (CA 1st Cir) (1965).

We reiterate that well-settled rule here and express wonderment at its continued violation, particularly when it is also directly made the subject of prosecution comment to the jury. Cf. Griffin v California, 380 US 609, 14 L ed 2d 106, 85 S Ct 1229 (1965); United States v Sutton, 15 USCMA 531, 36 CMR 29. The cross-examination and argument of counsel in this case come well within the prohibited area. United States v Tackett, supra; United States v Russell, supra; Fagundes v United States, supra.

Turning to the issue of prejudice, we are met with the usual argument that the evidence of guilt was compelling and that the law officer's instruction to disregard the cross-examination in any event suffices to remove any possible

risk that Stegar's pretrial silence was thrown into the balance. See United States v Andrews, supra. The evidence of guilt, however, is far from compelling. True, both parties conceded that rape occurred, but the identification of the accused by a single witness as a perpetrator was heavily attacked. The witness admittedly based it upon a fleeting second's view, and he made his later, formal identification, knowing the accused's cap had been found at the scene and without having to pick him from a lineup. Contrarily, the accused denied any participation in the assault on the victim and his tale of assistance to her is borne out to some degree by her own testimony. Hence, we believe a substantial factual issue of identification was present, and there is more than a fair risk that the scales were swung in the Government's favor by its impermissible cross-examination and argument.

Nor are we impressed by the contention that the law officer's instructions ▮▮▮▮▮▮ were sufficient to eradicate the prejudice here shown. Whether such advice is effective depends upon the circumstances in each case. United States v Richard, 7 USCMA 46, 21 CMR 172. It cannot serve to erase the impact of every serious departure from evidentiary norms. United States v Grant, 10 USCMA 585, 28 CMR 151. In the philosophical words of the Illinois Supreme Court, "[t]he human mind is not a slate, from which can be wiped out, at the will and instruction of another, ideas and thoughts written thereon." People v Deal, 357 Ill 634, 192 NE 649, 652 (1934). See also De Luna v United States, 308 F2d 140 (CA 5th Cir) (1962). In like manner, the Supreme Court pointed out in *Grunewald*, supra, at page 424, that such instructions did not outweigh "the danger that the jury made impermissible use of the testimony by implicitly equating the plea of the Fifth Amendment with guilt [which] is, in light of contemporary history, far from negligible."

Under the circumstances here presented, we likewise believe the instructions of the law officer insufficient to purge the error. The references to accused's pretrial silence were lengthy and repeated. They were included in trial counsel's final argument. Indeed, we have not before seen so flagrant a violation of the principle which we have long since laid down. Hence, we believe a fair risk of prejudice remained and that reversal, therefore, is required.

The decision of the board of review is reversed and the record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):
Dependent as they are upon human beings, few, if any, trials are perfect in observance of the rules of evidence and procedure. Recognizing that circumstance as to an error of the kind before us, we have uniformly held the record of trial must demonstrate a fair risk of prejudice to the accused to justify reversal of the findings of guilty. United States v Andrews, 16 USCMA 20, 36 CMR 176.

Here, the accused was observed in the act of rape; and he was identified by an eyewitness who remained unshaken throughout an extensive cross-examination. Yet, the majority tell us his conviction is unlawful because the court members could have drawn an improper inference of guilt from disclosure of the fact that he remained silent when questioned before the trial. I just cannot accept that conclusion.

The record of trial so compellingly demonstrates the accused's guilt, that I find it impossible to conceive the risk of harm from the elliptical inference the majority draw from trial counsel's cross-examination of the accused. I am strengthened in my belief by the instructions the law officer gave the court members on that point. He told the court members they could not treat the accused's silence before trial "as in any manner being an admission of guilt." He further advised them that every person has a right to remain silent, and he instructed that "not only does the law prohibit drawing" an inference of guilt from the right to remain silent, but

**573**

"it is also illogical to draw such an inference."

I would affirm the decision of the board of review.